# WALTER T. PARKER *v.* STATE OF MARYLAND

[No. 694, September Term, 1970.]

*Decided August 6, 1971.*

The cause was argued before THOMPSON, POWERS and GILBERT, JJ.

*E. Thomas Maxwell, Jr.,* for appellant.

*Josef Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *David Simonson, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

After two days of observing an individual later identified as Walter T. Parker, appellant, in activities which he took to be writing numbers, and after himself placing bets on four numbers with appellant, Officer Luther Bond of the Baltimore City Police Department obtained a search and seizure warrant, and on January 24, 1970 arrested appellant, and searched the area in which the arrest was made.

The scene of the suspected activities and of the arrest was an area known informally as the "cage", which was an open, semi-public part of the premises of the Diamond Cab Company at 1920 Ashburton Street in Baltimore. It was equipped with a row of about 12 booths on each side, for the use of cab drivers to pick up and make out their manifests. The booths were not enclosed, but each of the two rows actually was made up of a long inclined wooden surface, at a height convenient for writing by a man standing up, separated into sections by side partitions. The entire structure, including the inclined

writing surface, was supported by a wooden framework.

Appellant was a driver for Diamond Cab, and he had access equally with other drivers to the "cage" area, including the booths.

On the basis of observations by Officer Bond, and the evidence seized by him in executing the warrant, twelve indictments were found against appellant by the Grand Jury for the City of Baltimore. Each was similar, containing four counts. The indictments differed in that each charged the offenses on a different day. The days involved were January 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23 and 24, 1970.

In a bench trial before Judge Charles D. Harris in the Criminal Court of Baltimore, appellant was found not guilty under the indictment charging offenses on January 24, 1970, and not guilty of counts two and three, but guilty of counts one and four in each of the other eleven indictments. The offenses of which he was convicted were selling a lottery ticket, and possessing books, lists, slips and records relating to a lottery. He was sentenced under each of the eleven indictments to pay a fine of $1,000.00 and to serve one year, all consecutive, but the prison sentences were suspended upon payment of the fines and costs.

Appellant makes three contentions here:

1. The court erred in convicting appellant of sale in ten of the eleven convictions, because there was no evidence of sale.

2. The court erred in convicting appellant of sale in the other one of the eleven convictions, because the indictment was for sale "to a certain person whose name is to the Jurors aforesaid unknown", when in fact the sale was to Officer Luther Bond, whose name was known.

3. The court erred in convicting appellant of possession of lottery paraphernalia when in fact he had neither actual nor constructive possession.

Officer Bond testified that on January 23, 1970, the day before the arrest, he placed, and appellant accepted from him, bets on four different numbers. Appellant

wrote the numbers down on a piece of paper. The following day, January 24, 1970, Officer Bond entered the area with a search warrant, and observed appellant at a booth having a conversation with an unknown man. The officer approached, placed appellant under arrest, and searched the booth where appellant had been. He recovered a pad of lottery numbers and carbon paper "from underneath the cubicle area of the desks". The pad of paper was received in evidence as a State's exhibit. The officer then searched under several of the other booths and found, "several dated envelopes which contained lottery numbers that were written on similar paper as that pad", as well as odd pieces of paper which were considered nonconventional lottery slips. The envelopes were dated, respectively, January 12, 13, 14, 15, 16, 17, 19, 20, 21, 22 and 23. The aggregate contents of the envelopes was 197 slips, 3,938 numbers, recording a play of $12,592.95. All of the envelopes and their contents were received in evidence as a State's exhibit.

1.

Possession of lottery tickets or slips recording a sale is sufficient evidence, though circumstantial, to support an inference that the possessor made the sale. The Court of Appeals held in *Moore v. State,* 199 Md. 676, 87 A. 2d 577, that "the tickets themselves are evidence of prior sales * * *". That case involved a charge of keeping an automobile for the purpose of selling lottery tickets. Tickets were found in the course of a lawful search of the automobile. In holding that the tickets were evidence of prior sales, the Court rejected the contention that they would only support a charge of possession, not of sale. At pages 680 and 681. To the same effect is *Gatewood v. State,* 244 Md. 609, 619, 224 A. 2d 677.

If, under the evidence, it was proper to find that the eleven envelopes were in the possession of appellant, it was not error to convict him of selling a lottery ticket on each of the dates noted on the envelopes. In *Lee v. State,* 198 Md. 383, 84 A. 2d 63, the appellant contended

that two papers found in his automobile on January 12, 1951, bearing dates of Jan. 1st and Jan. 8th, each containing notations of names and numbers, did not constitute evidence sufficient to show that they were actually in his possession on the dates noted. The Court of Appeals, through Chief Judge Marbury, said at page 388:

"Two of his convictions were for having such papers in his possession on these two dates. Winning "numbers" are determined from certain figures in the amounts paid on the winners at certain horse races held at a certain track on a certain day. The slips containing the numbers and amounts paid by individuals must therefore be prepared prior to the time of the races on the day in question, and, of course, they would carry that date. The sheets dated January 1 and January 8 must have been written by appellant on those dates, and therefore he must have had them in his possession on those dates."

### 2.

Appellant attacks separately his conviction of selling a lottery ticket on January 23rd to a person unknown, saying that a sale made that day was to Officer Luther Bond, whose name was not unknown. He cites *Seidman v. State,* 230 Md. 305, 187 A. 2d 109, in support of his contention. We need not determine the applicability of *Seidman,* since each envelope contained records of many sales, and any one of them in the envelope marked January 23 would support the conviction. There is nothing to show that any of the persons other than Officer Bond to whom appellant sold a lottery ticket on January 23 was known. In any event, the point was not raised below, and we need not decide it here. Maryland Rule 1085.

### 3.

The semi-public "cage" area where the eleven incriminatory envelopes were found was shown to be equally accessible to appellant and to other cab drivers. Without

more than this kind of access, an inference that appellant possessed the secreted envelopes, actually or constructively, could not be supported. On the other hand, if it could be shown by direct evidence or by fairly deducible inference that he originated or possessed them on the dates written on the envelopes, then it could be said that "the evidence either shows directly or supports a rational inference of the facts to be proved, from which the lower court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged". *Williams and McClelland v. State,* 5 Md. App. 450, 247 A. 2d 731.

Judge Harris, as the trier of the facts, did find that appellant originated and possessed the envelopes and their contents on the dates noted on the envelopes. *Lee v. State, supra.* He did so as the result of his comparison of the handwriting on the pad of paper found in the immediate presence of appellant at the time of his arrest, with the handwriting on the envelopes and their contents. The trial judge was entitled, on the evidence, to accept the writing on the pad of paper as a proved standard of appellant's handwriting, and to make comparisons between that standard and other questioned specimens of handwriting, and to find, as a fact, that they were written by the same person. These findings connected appellant, and only appellant, with the eleven envelopes, and supported each of the findings of guilt made by Judge Harris.

The genuineness of the writings on and in the envelopes, as having been written by appellant, could be determined by the trier of the facts, and the aid of expert opinion evidence on the point was not required.

In an annotation on the propriety of a comparison, by the trier of facts without the aid of an expert witness, between a proved or admitted writing and questioned writings, it is said at 80 A.L.R.2d 274:

"At common law a general rule developed
·that the trier of facts could not make a com-

parison of handwriting, but an exception to this rule came to be almost universally recognized when a proved or admitted standard used for comparison with the disputed writing was already in evidence for other purposes. When comparison was permitted under this exception, most courts in which the question has arisen or has been mentioned have held or recognized that the trier of facts could make the comparison with or without the aid of experts or without being controlled by expert testimony if given * * *".

The Court of Appeals of Maryland long ago said, in *Williams v. Drexel,* 14 Md. 566, 572:

"We think that, where a paper, which is admitted or clearly proved to be genuine, is already in a cause, and another paper, pertinent to the issue, alleged to be in the same handwriting, is offered in evidence, the jury may compare the latter with the former".

Maryland Code, Art. 35, § 12, after a sentence dealing with execution of written instruments, provides:

"Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury, or the court, as the case may be, as evidence of the genuineness or otherwise of the writing in dispute."

See *Citizens National Bank v. Custis,* 153 Md. 235, 245, 138 A. 261.

It was proper for the trial judge, sitting without a jury, to make comparisons of handwriting on the papers in evidence, and to draw inferences of fact from those comparisons.

None of the judgments against appellant was clearly erroneous, and we shall not disturb them. Maryland Rule 1085.

*Judgments affirmed.*
*Appellant to pay costs.*