# CLIFFORD LLOYD DiPIETRO *v.* STATE OF MARYLAND

[No. 707, September Term, 1975.]

*Decided May 6, 1976.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.

*Joseph C. LaVerghetta, Assigned Public Defender,* for appellant.

*Henry E. Dugan, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City* and *Steven Suser, Assistant State's Attorney for Baltimore City* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Judge Charles D. Harris, in a non-jury trial in the Criminal Court of Baltimore, found the appellant, Clifford Lloyd DiPietro, guilty on a four-count indictment charging forgery and three related offenses. He received concurrent sentences of ten years on each count.

The record indicates that the appellant was employed part-time as a laboratory technician for Dr. Bernard Kleiman from approximately February 1 until August 9, 1974. In July, 1974, while making a routine examination of his cancelled checks, Dr. Kleiman failed to recognize the name of the payee on one of the checks and immediately realized that his signature had been forged. Noticing that the number on the check was far in advance of the numbers he was currently using, he examined his checkbook and found that three checks had been removed. In August, he found a second forged check among his cancelled checks. The appellant's endorsement appeared on this check. Dr. Kleiman then notified his bank of the problem.

At trial Dr. Kleiman identified the two checks and stated that the drawer's signature was not his and that he did not

know and had never employed the persons whose names appeared on the checks as the payees. He testified that the checks he kept in his office were used to pay office expenses, including salaries. They were kept in an unlocked cupboard in his personal office, although at times the checkbook remained on his desk after he had used it. Dr. Kleiman further testified that while none of his employees ordinarily would have any reason to go into his office, the appellant as well as his other employees had been in without his objection. Only Dr. Kleiman and his associate, Dr. Blankman, were authorized to sign the checks.

Detective Richard Bednarski, a member of the Check Squad for the Baltimore City Police Department, testified that after investigating the incident, he asked the appellant to come into the police station for questioning. After waiving his *Miranda* rights (*Miranda v. Arizona*, 384 U. S. 436 (1966)), the appellant stated that he had no knowledge of the forged checks and that he had never had them in his possession. At that time, the appellant voluntarily gave the police officer a handwriting sample and left.

The resulting handwriting analysis by the F.B.I. stated that "Due to unexplained variations, it was not determined whether any of the questioned writing on Q-1 and Q-2 [the two forged checks] was or was not written by C. DiPietro, K-1 [the appellant]." A Baltimore City crime laboratory report containing the results of a fingerprint comparison test indicated that the appellant's fingerprint was found on the back of the check on which the appellant's alleged endorsement appeared. As a result of the fingerprint comparison test, the appellant was arrested and charged with forgery. At trial the results of the F.B.I. handwriting analysis and the Baltimore City crime laboratory fingerprint analysis were read into evidence.

The appellant took the stand and denied having had any involvement in the forgeries. He admitted having been previously convicted of impersonating an officer while in the United States Air Force. He repeatedly denied, however, having been convicted of forgery, uttering and larceny while in the service. Mr. Barry R. Bannister, a fingerprint

specialist for the F.B.I., testified that the F.B.I. records showed that appellant had been convicted of committing those crimes under another name.

At the conclusion of the evidence, the trial judge found the appellant guilty of forgery (and other related offenses) with respect to the one check upon which the appellant's endorsement appeared. Based on his independent comparison of the writing on the forged check with the appellant's handwriting samples, the judge concluded that the writing on the forged check was, in fact, the appellant's writing. He reasoned that this finding, coupled with the positive identification of the appellant's fingerprint on the check, was sufficient evidence from which to find the appellant guilty of forgery.

The appellant first contends that the "trial judge overrode his bounds of discretion" when he used, as the basis for comparing the handwriting on the forged instrument, evidence which was introduced solely for the purpose of making the comparison. In making this contention, he points to the opinion of this Court in *Parker v. State*, 12 Md. App. 611 (1971), where, in the course of the opinion, there was set forth the following quotation from 80 A.L.R.2d 274 (1961):

> " 'At common law a general rule developed that the trier of facts could not make a comparison of handwriting, but an exception to this rule came to be almost universally recognized *when a proved or admitted standard used for comparison with the disputed writing was already in evidence for other purposes.* When comparison was permitted under this exception, most courts in which the question has arisen or has been mentioned have held or recognized that the trier of facts could make the comparison with or without the aid of experts or without being controlled by expert testimony if given * * *.' " (Emphasis added.)

There are really two sound reasons why the appellant's contention lacks merit. It is clear from reading the record that although the trial judge did use the appellant's

endorsement on his paychecks as a standard for comparison, even though the endorsed paychecks were introduced solely for the purpose of comparison, he also used other writing samples in reaching his conclusion. These other writing samples introduced at the trial consisted of the appellant's signature on the Explanation of Rights form, his signature on the Baltimore City Police Department fingerprint chart and his signature on the F.B.I. fingerprint chart. The Explanation of Rights form was used at the trial to show that the appellant voluntarily waived his *Miranda* rights when he was called into the police station for questioning. The Baltimore City Police Department fingerprint chart was used to show that the appellant's fingerprint was found on one of the checks. The F.B.I. fingerprint chart was used as evidence of the appellant's prior convictions. Thus, all of these latter documents were "already in evidence for other purposes."

Accordingly, even if appellant were correct in his assertion that *Parker* holds that a proved writing can only be used for comparison with the disputed writing when the former has already been admitted into evidence for other purposes, his contention would fall since it is apparent that evidence of appellant's proved signatures was already in evidence for other purposes. The so-called *Parker* ruling, as appellant would have us read it, is thereby satisfied.

But we think that a more fatal defect in the appellant's contention is that he misreads the holding in *Parker*.

The issue in *Parker* was not whether a proved standard could be used for comparison with the disputed writing even though the proved writing was not already in evidence, for in *Parker* the proved writing was already in evidence for other purposes. The issue in *Parker* was simply whether the trier of facts, be it jury or court, could properly determine the genuineness of writings without the aid of an expert and we held that the trier of facts could properly make such a determination. It is true that there is a quotation in *Parker* from the Court of Appeals decision in *Williams v. Drexel*, 14 Md. 566, 572 (1860), which states:

"We think that, where a paper, which is admitted

or clearly proved to be genuine, is already in a cause, and another paper, pertinent to the issue, alleged to be in the same handwriting, is offered in evidence, the jury may compare the latter with the former."

It is apparent, however, that Judge Powers, who authored the *Parker* opinion, was simply delineating as a matter of historical interest the common law rule governing the comparison of disputed writings with proved documents already in evidence, for immediately following the discussion he set forth, almost *in toto*, Maryland Code, Art. 35, § 12 which was in effect at the time of the decision. Article 35, § 12 then provided:

"Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury, or the court, as the case may be, as evidence of the genuineness or otherwise of the writing in dispute."

Thus, it becomes clear that appellant's assertion that *Parker* stands for the proposition that a disputed writing may only be compared with a proved writing if the latter is already in evidence for other purposes is simply not supported by a careful reading of *Parker*.

In 1973, Article 35, § 12 was rewritten. It now reads:

"(a) *In General.* — Except as provided in subsection (b) evidence is admissible in any proceeding to prove the execution of a written instrument attested by one or more subscribing witnesses in the same manner as the instrument might be proved had it not been attested. Evidence of a disputed writing is admissible and may be submitted to the trier of facts for its determination as to genuineness.

(b) *Exception.* — The provisions of this section

do not apply to the proof of the execution of a last will and testament or codicil." (Maryland Code, Courts and Judicial Proceedings Article, § 10-906 (1974)).

The Revisor's note states:

"This section is new language derived from Article 35, § 12. The section is divided into two subsections in order to place additional emphasis upon the fact that the elements permissible in legal proceedings do not apply to wills. This statute has been recently construed in *Parker v. State,* 12 Md. App. 611 (1971). Changes are made in style and language."

The reference to *Parker v. State, supra,* which was decided under the old wording, emphasizes the fact that the intended change was in style, not in substance.

Moreover, although some states do limit the admissible standard to a standard introduced into evidence for other purposes, *see* Anno., 80 A.L.R.2d 272 (1962), we cannot find, even in the absence of the statute, any reason for making such a distinction. If the objective is the determination of the authenticity of a signature, then the most direct and most certain way to reach a confident conclusion is by allowing counsel to introduce any writing proved to be genuine whether it is otherwise relevant to the case or not. Restricting the standard imposes unnecessary obstacles to the ascertainment of facts. Accordingly, we are of the opinion that the authenticity of a disputed writing may be established by use of any writing proved to be genuine regardless of its relevancy to the rest of the case.

The appellant also contends that under the controlling statute, testimony from an expert witness is a condition precedent to a comparison by the trier of fact. Courts Article, § 10-906. The appellant relies on *McIntyre v. Saltysiak,* 205 Md. 415 (1954), which involved a contested will. It is apparent, however, from reading the governing statute, which was substantially the same as the present

statute, that the general rule is not applicable to *caveat* proceedings. Courts Article, § 10-906 (b). The present case involves the application of the general rule which does not require expert testimony prior to submission of the disputed document to the trier of facts. *See Citizens National Bank v. Curtis,* 153 Md. 235 (1927); *Parker v. State, supra.*

The appellant further contends that the evidence was insufficient to support a finding of guilt. First, he asserts that the testimony showed that his fingerprint could have been placed on the check inadvertently in the course of his employment. Secondly, he argues that since the trial judge found that the appellant had endorsed both checks, the judge erred when he found the evidence sufficient to convict the appellant of forging one check but not the other.

In *Lawless v. State,* 3 Md. App. 652, 659 (1968), this Court stated:

> "The fingerprint evidence, as we construe it, need be coupled only 'with evidence of other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime' * * *. The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed."

In the present case, the appellant's fingerprint was found on the *back* of a check which had been removed out of numerical sequence from the rest of the checks and near the end of the series which were currently in use. Since the evidence demonstrated that the appellant had no legitimate reason for handling the checkbook, this was sufficient "to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime."

Appellant's contention that the trial judge believed both checks were endorsed by the appellant does not comport with a fair reading of the record. The trial judge stated:

> "The endorsement on Check 1789 of Richard J. Frazier and the endorsement on Check No. 1791 of

Richard J. Schaeffer, in my opinion, were made by the same person. Very striking similarities in the endorsement of those two apparently fictitious payees. But underneath the endorsement of Richard J. Schaeffer on Check No. 1791 is the endorsement of Clifford L. DiPietro, and in comparing Mr. DiPietro's endorsement on the paychecks which were offered in evidence and other samples of his handwriting, there is no doubt in my mind that Mr. DiPietro did, in fact, endorse Check 1791 under the signature of the fictitious Richard J. Schaeffer."

It is clear that the trial judge did not find that both checks were endorsed by the appellant, but rather that only the check on which the appellant's name appeared was in fact endorsed by the appellant. This evidence, coupled with the fingerprint evidence, was sufficient to convict the appellant of forgery. *See Bafford v. State*, 235 Md. 41 (1964).

The appellant finally argues that he "was not fully and adequately informed within constitutional dimensions to freely, knowingly, and intelligently be able to elect his rights * * *." Unable to find authority for his proposition, he claims that as a matter of policy, before a defendant can make an intelligent and knowing waiver of his claimed fifth amendment right to remain silent, he must be made fully aware of the consequences of his decision. More specifically, he contends that he should have been informed that if he testified, the state could question him about his prior convictions.

While certainly the better practice would be to inform the appellant out of the presence of the jury that by taking the stand he may be cross-examined as to his prior criminal record, we find the omission to do so here is not of such prejudicial dimension as to require reversal of his convictions. Since the appellant was represented by counsel, it is inferred that he was advised of his option not to testify. *Stevens v. State*, 232 Md. 33, 38-39 (1963). Nor does the trial court have any duty to explain to the defendant the

ramifications of his decision to testify. *State v. McKenzie,* 17 Md. App. 563, 582-83 (1973).

*Judgments affirmed.*