223 N.J. Super. 409 (1988)
538 A.2d 1278
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARTIN BOGUS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1987.
Decided March 4, 1988.
*414 Before Judges MICHELS, SHEBELL and GAYNOR.
Venturi, Nord & Brockway, attorneys for appellant (Jack Venturi, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Jessica S. Oppenheim, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried before a jury, defendant Martin Bogus was found guilty of two counts of aggravated manslaughter by recklessly causing the deaths of Linda Kaminski and Walter Kaminski under circumstances manifesting extreme indifference to human life, crimes of the first degree, in violation of N.J.S.A. 2C:11-4a. The trial court granted defendant's motion for a new trial on the ground that it failed to advise defendant of his right not to testify. The State's motion for reconsideration was denied. However, we granted the State leave to appeal and summarily reversed the order granting defendant a new trial on the ground that his motion was untimely. We remanded the matter to the trial court for resentencing. The trial court thereupon committed defendant to the custody of the Commissioner of the Department of Corrections for 15 years with a seven-and-one-half year period of parole ineligibility for the *415 aggravated manslaughter of Linda Kaminski (First Count) and to a concurrent term of 15 years for the aggravated manslaughter of Walter Kaminski (Second Count). Finally, defendant was assessed penalties totaling $50, payable to the Violent Crimes Compensation Board.
According to the State's proofs, at approximately 8:18 p.m. on April 1, 1983, defendant was driving his pickup truck on Main Street in Woodbridge, New Jersey, in the right lane of traffic. At that time, Walter Kaminski and his wife Linda were stopped in their Corvette on Woodbridge Center Drive at the traffic light at the intersection of Main Street. The Kaminski vehicle, the first car in the left lane, was preparing to turn left onto Main Street. The first car in the right lane on Woodbridge Center Drive was a Camaro driven by John Fernandez and Vicky Bates Fernandez.
From the passenger seat of the Fernandez vehicle, Mrs. Fernandez noticed the traffic light on Main Street turn amber. Although the left lane of traffic was slowing down, defendant was accelerating and, in Mrs. Fernandez' estimation, was traveling at about 50 or 60 miles per hour as he approached the intersection. The speed limit on Main Street was 40 miles per hour.
When the light turned green for traffic on Woodbridge Center Drive, the Fernandezes proceeded into the intersection. However, upon realizing that the pickup truck traveling on Main Street was not braking, Mrs. Fernandez screamed and Mr. Fernandez stopped the car in the middle of the intersection. Swerving to avert the Fernandez vehicle, defendant crashed into the Kaminski's Corvette as it was turning onto Main Street. The collision pushed the Kaminski vehicle up onto the curb, tore down a traffic light and stanchion and left defendant's truck laying on its side on the ground. From the injuries sustained in the accident, Mrs. Kaminski died within a day; Mr. Kaminski died May 7, 1983.
*416 While speaking with defendant, Patrolman Robert Kelly of the Woodbridge Police Department, the police officer who investigated the accident, noticed a strong odor of alcohol on defendant's breath. Defendant "appeared to be dazed or drunk." Defendant was swaying and staggering from side to side. However, Patrolman Kelly could not determine if defendant's condition was attributable to inebriation or to injury from the accident. Transported to Perth Amboy General Hospital, defendant at first refused to submit to a blood test, but eventually relented. The sample taken from defendant was tested and showed a blood-alcohol content of approximately .23.
Dr. Richard Saferstein, the chief forensic chemist for the New Jersey State Police, testified that for someone of defendant's body weight to have a blood-alcohol reading of .23, he would have had to consume 11 beers or 16 ounces of 80-proof alcohol. Moreover, Dr. Saferstein testified that a .23 reading was indicative of severe intoxication and would result in a very high reaction time, that is, hand-eye and hand-foot coordination would be extremely delayed. Additionally, Dr. Saferstein testified that an individual with a .23 blood-alcohol level would exhibit "a significant deterioration in judgment and self-control" and that such "individual would lose his sense of caution and self-restraint." Dr. Saferstein was of the opinion that one's ability to perceive distance and depth is severely affected by a.23 blood-alcohol level and thus such a level would increase one's chances of being in a vehicular accident by a factor of 60. In Dr. Saferstein's opinion, an individual with a .23 blood-alcohol level is "severely intoxicated and highly impaired." At the conclusion of trial defendant was found guilty on two counts of aggravated manslaughter. This appeal followed.
Defendant seeks (1) a reversal of his convictions and a judgment dismissing the indictment charging him with aggravated manslaughter; or, (2) a reversal of his convictions and a remand for a new trial, or, alternatively, (3) a modification of his sentences. The grounds on which he seeks this relief are set forth in his brief as follows:

*417 POINT I DEFENDANT'S PRETRIAL MOTION TO DISMISS THE SUPERSEDING INDICTMENT CHARGING AGGRAVATED MANSLAUGHTER SHOULD HAVE BEEN GRANTED.
POINT II TRIAL JUDGE HAD AN OBLIGATION TO ADVISE APPELLANT OF HIS RIGHT NOT TO TESTIFY AND OF THE CONSEQUENCES HIS TESTIFYING MAY PRODUCE.
POINT III THE TRIAL JUDGE ERRED IN ADMITTING APPELLANT'S DRIVING RECORD AS EVIDENCE OF HABIT OR CUSTOM.
POINT IV TRIAL JUDGE'S FAILURE TO PROPERLY CHARGE THE JURY REGARDING CHARACTER TESTIMONY AND ITS POTENTIAL FOR CREATING REASONABLE DOUBT CONSTITUTED PLAIN ERROR.
POINT V THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE AND SHOULD BE REDUCED TO SEVEN YEARS.
A. The Trial Judge Improperly Included an Element of the Offense as an Aggravating Circumstance.
B. The Trial Judge Improperly Included Appellant's Attitude as an Aggravating Circumstance.
C. The Appellate Court has the Power to Review the Trial Court's Sentencing Where, as Here, There is an Abuse of Discretion.
D. A Sentence Modification in Accord with N.J.S.A. 2C:44-1f(2) is Justified Where, as Here, the Mitigating Factors Outweigh the Aggravating Factors.

I.
Defendant was originally indicted by the Middlesex County Grand Jury and charged with two counts of manslaughter, crimes of the second degree, in violation of N.J.S.A. 2C:11-4b(1). Defendant thereafter entered a plea of not guilty to the indictment. The matter, however, was re-presented to the Grand Jury which filed a superseding indictment charging defendant with two counts of aggravated manslaughter, crimes of the first degree, in violation of N.J.S.A. 2C:11-4a. The trial court thereafter denied defendant's motion to dismiss the indictment which defendant now challenges on this appeal.
Relying upon State v. Milligan, 202 N.J. Super. 336 (App.Div. 1985), aff'd o.b. 104 N.J. 67 (1986), defendant argues that "death by auto is the exclusive charge when a driver's reckless conduct in operating an automobile causes the death of another." Moreover, he asserts that his "conduct in trying to beat a traffic light turning red by doing 50 mph in a 40 mph zone is certainly not uncommon on New Jersey roads and does not rise *418 to that level of recklessness which constitutes the equivalent of a high probability of causing death." Thus, defendant contends that there was insufficient evidence to support a sentence for aggravated manslaughter and both his motion to dismiss the superseding indictment and his motion for judgment of acquittal should have been granted.
Codified in N.J.S.A. 2C:11-4a, aggravated manslaughter is defined as follows:
Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
In contrast, the death by auto statute, N.J.S.A. 2C:11-5 provides, in part, that:
Criminal homicide constitutes death by auto when it is caused by driving a vehicle recklessly.
Although both offenses require that a defendant cause death by acting recklessly, N.J.S.A. 2C:11-4a has the additional element of "manifesting extreme indifference to human life." The distinction between these two standards of conduct and, hence, the respective offenses, was explained in State v. Potts, 200 N.J. Super. 488 (Law Div. 1985), as follows:
[T]he elements of the death by auto statute and the aggravated manslaughter statute overlap, but are not identical. Aggravated manslaughter has an additional element which the State must prove. The element of culpability is greater than mere recklessness. It is recklessness under circumstances manifesting extreme indifference to human life. See State v. Curtis, 195 N.J. Super. 354 (App.Div. 1984) (distinction between aggravated and reckless manslaughter). [Id. at 495].
See also Milligan, 202 N.J. Super. at 351.
Thus, aggravated manslaughter and death by auto are separate indictable offenses, and, depending upon the circumstances of a given case, a defendant causing death by reckless driving may be prosecuted for either or both offenses. See Potts, 200 N.J. Super. at 495.
Additionally, defendant's reliance upon Milligan is misplaced. At issue in Milligan was whether a homicide caused by reckless driving could be prosecuted under the manslaughter statute *419 as opposed to the death by auto statute. Noting that both statutes proscribe reckless conduct and having reviewed the history of the death by auto statute in New Jersey, this court concluded "that the Legislature intended prosecutions only under N.J.S.A. 2C:11-5 where death results from reckless driving." 202 N.J. Super. at 346. However, in rendering our decision in Milligan we observed that "if the evidence shows `conduct with a culpability level beyond that of recklessness, the State may proceed to charge the offenses of aggravated manslaughter [N.J.S.A. 2C:11-4a] and even murder [N.J.S.A. 2C:11-3] if the conduct is purposely and knowingly accomplished with an automobile." Id. at 340-341.
Here, there was ample evidence that defendant acted recklessly and with extreme indifference to human life. After drinking to the point of being severely intoxicated, he drove his truck on a main thoroughfare at an excessive rate of speed and proceeded into the intersection in the face of a red traffic light. Both the decision to drive and the manner in which defendant operated his vehicle indicate a complete disregard for the lives of others. Thus, the indictment was not so "palpably defective" as to warrant its dismissal. See State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 19 (1984). Consequently, we affirm the denial of defendant's motion to dismiss the superseding indictment substantially for the reasons expressed by Judge Deegan in his letter opinion of April 10, 1984.
With respect to defendant's argument that a judgment of acquittal should have been entered sua sponte by the trial court at the close of the State's case, it should be noted that defendant never moved for such relief. Thus, sound principles of appellate procedure preclude this court from now considering such argument. See State v. Souss, 65 N.J. 453, 460 (1974); Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973); Skripek v. Bergamo, 200 N.J. Super. 620, 629 (App.Div. 1985), certif. den. 102 N.J. 303 (1985). Moreover, even if we were to ignore this necessary and fundamental principle of appellate *420 review and entertain defendant's claim on the merits, it is perfectly clear on this record that a jury could have found defendant guilty of the charge of aggravated manslaughter beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 459 (1967). See State v. Martinez, 97 N.J. 567, 571-572 (1984). In any event, the jury verdict was not a manifest denial of justice under the law. R. 2:10-1. See State v. Carter, 91 N.J. 86, 96 (1982); State v. Sims, 65 N.J. 359, 373-374 (1974).
Finally, defendant argues that the jury was not properly charged because the trial court neglected to instruct the jurors "to focus on the defendant's conduct to determine whether his actions constituted a possibility or a probability of resulting death." Preliminarily, it should be noted that defendant did not raise this objection at trial. Beyond this, if here again we were to abandon the principle of appellate review discussed above and turn to the merits of defendant's argument, we would conclude that the trial court correctly charged the jury as to aggravated manslaughter under N.J.S.A. 2C:11-4a as well as death by auto under N.J.S.A. 2C:11-5. We further note that the jury had the option of convicting defendant of the lesser included offense of death by auto and chose not to do so.

II.
Defendant contends that even though he was represented by counsel the trial court had an independent "obligation to advise him of his right not to testify" and the consequences his testimony may produce before he could knowingly and voluntarily waive his constitutional right against self-incrimination.[1] We disagree.
*421 The Fifth Amendment to the United States Constitution provides in part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. Amend. V. In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the Supreme Court held this privilege against self-incrimination applicable to the states through the Fourteenth Amendment. Although we have no similar provision in our New Jersey Constitution, the right of an accused in any criminal action not to be called as a witness and not to testify has long been a part of New Jersey law and has been incorporated into our Rules of Evidence. State v. Hartley, 103 N.J. 252, 260 (1986); State v. Auld, 2 N.J. 426, 436 (1949); State v. Zdanowicz, 69 N.J.L. 619, 622 (E. & A. 1903); Evid.R. 23, 24 and 25.
The Fifth Amendment's privilege against self-incrimination actually protects two distinct rights:
The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. [Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973)].
See also McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); State v. Hartley, 103 N.J. 252 (1986); State v. Fary, 19 N.J. 431, 434 (1955); Current N.J. Rules Of Evidence, Comment 6 to Evid.R. 25(d).
A defendant's right not to take the stand includes not only the right to avoid giving incriminating responses to inquiries put to him but also to be free from the inquiries themselves. See State v. Morales, 138 N.J. Super. 225, 229 *422 (App.Div. 1975); State v. Auld, 2 N.J. 426, 436-437 (1949). See also McCormick On Evidence, § 130 at 315 (3d ed. 1984). The privilege against self-incrimination is sufficiently important that the Constitution further guarantees that no adverse inferences are to be drawn from the exercise of that privilege, Griffin v. California, 380 U.S. 609, 612-615, 85 S.Ct. 1229, 1232-1233, 14 L.Ed.2d 106 (1965); State v. Lanzo, 44 N.J. 560, 563 (1965), and "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California, supra, 380 U.S. at 615, 85 S.Ct. at 1233; State v. Lanzo, supra, 44 N.J. at 563. Furthermore, a defendant is entitled to have the jury instructed that it may not draw any inferences adverse to the defendant on the basis of his failure to testify. Carter v. Kentucky, 450 U.S. 288, 305, 101 S.Ct. 1112, 1121, 67 L.Ed.2d 241 (1981); State v. Smith, 100 N.J. Super. 420, 422-425 (1968). Clearly, the Constitution protects a defendant's silence "unless he chooses to speak in the unfettered exercise of his own will." Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964).
It is well-settled that a defendant who voluntarily takes the stand and offers testimony in his own behalf exposes himself to cross-examination and the possibility of being compelled to testify against himself. See Brown v. United States, 356 U.S. 148, 154-156, 78 S.Ct. 622, 626-627, 2 L.Ed. 589 (1958); State v. Auld, 2 N.J. 426, 436-437 (1949); State v. Zdanowicz, 69 N.J.L. 619, 622 (E. & A. 1903); See also United States v. Weber, 437 F.2d 327, 334 (3d Cir.1970) cert. den. 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971). The practical result, therefore, of a defendant's decision to testify is to effect a waiver of his constitutional privilege against self-incrimination, at least to the extent necessary to permit effective cross-examination. See State v. Auld, supra, 2 N.J. at 437; State v. Zdanowicz, supra, 69 N.J.L. at 622; See also State v. Sempsey, 141 N.J. Super. 317, 324 (App.Div. 1976), certif. den. 74 N.J. 272 and 273 (1977); State v. Nagy, 27 N.J. Super. 1, 9 (App.Div. 1953); Evid.R. 25(d).
*423 Defendant claims that he did not knowingly and intelligently waive his right not to testify because the trial court failed to conduct a voir dire examination or otherwise inform him on the record of his right not to testify and of the consequences which attend the decision to testify. However, on the motion for a new trial, defendant's counsel admitted that in his opening to the jury he stated that defendant would testify and when the State rested its case, he again indicated to the trial court that defendant would testify. Defendant was called to the stand by his counsel and testified without objection. The inference is clear that defendant knowingly, voluntarily and intelligently, with the advice of counsel, waived his right not to testify and took the stand on his own behalf. Defendant's election to testify was a tactical decision and defendant must bear the consequences of it. Under these circumstances there was no duty on the trial court to advise defendant as to his right not to testify or to explain to him the ramifications of his decision to forego that right.
The decision of a defendant in a criminal case as to whether or not to testify rests ultimately with defendant and is an important strategic or tactical decision to be made by a defendant with the advise of his counsel. It is the responsibility of a defendant's counsel, not the trial court, to advise defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so or of not doing so. Thus, the general rule that has developed in this country is set forth in Wharton's Criminal Procedure, § 396 (Torcia 12th Ed. 1975), as follows:
Absent an applicable statute providing otherwise, neither the trial judge nor the prosecuting attorney is required to warn a witness or the defendant of his privilege against self-incrimination, except that the trial judge may in his discretion impart such a warning. However, where the defendant is not represented by counsel, the trial judge is ordinarily required to inform him of his right not to take the stand.
For a trial court to discuss the issue directly with a defendant represented by counsel may inappropriately involve the trial court in the unique attorney-client relationship, raising possible *424 Sixth Amendment as well as Fifth Amendment concerns. Cf. United States v. Goodwin, 770 F.2d 631, 637 (7th Cir.1985) cert. den. 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1985). In Com. v. Waters, 399 Mass. 708, 506 N.E.2d 859 (1987), the Supreme Judicial Court of Massachusetts succinctly explained the inherent problem in inquiring into a defendant's decision whether or not to testify:
Unlike most other rights, the right to testify is counterpoised by the right not to testify. Therefore, the exercise of one right is the waiver of the other. The decision whether to testify, ultimately the defendant's decision, is an important strategic decision made by the defendant with the advice of counsel. Often, the decision is made only as the trial unfolds. We do not think that the right to testify would be protected by requiring the judge to conduct a voir dire examination. Not only would the proper point at the trial to conduct the voir dire be uncertain, but the judge's role in this strategic decision would be problematic; to the extent the judge appeared to urge the defendant to exercise the right to testify, the judge would appear to urge the defendant to waive the right not to testify. [506 N.E.2d at 865].
Although there does not appear to be any reported decision directly on point in New Jersey, there is persuasive authority elsewhere that has declined to impose upon trial courts a duty to advise a defendant represented by counsel of his right not to testify and of the consequences of his decision whether or not to take the stand. For example, in State v. McKenzie, 17 Md. App. 563, 303 A.2d 406 (Ct.Spec.App. 1973), the Maryland Court of Special Appeals, in refusing to impose such a duty on the trial court, in part, stated:
Where, on the other hand, a defendant is represented by counsel, there is no duty on the part of the trial court to offer the accused any advice on his election to testify or not to testify or to explain the ramifications of either choice. The Court of Appeals said in Stevens, [v. State, 232 Md. 33] at 39, 192 A.2d at 77 [1963]:
"[W]e do not deem it essential for the protection of a defendant's constitutional rights that he be advised by the court of his right against self-incrimination when he is represented by counsel.... Here, the appellant was called to the stand by his counsel and in such a case there is no requirement that the court advise him of his right to refuse to testify."
See also Fowler v. State, 237 Md. 508, 515, 206 A.2d 802 [1965]. This is the state of the Maryland law and, under it, the State must prevail in its claim that McKenzie was erroneously awarded a new trial. [303 A.2d at 417].
* * * * * * * *

*425 When the attorney makes the determination that a defendant's testimony is crucial to a proper presentation of the defense, the decision to put the accused on the stand is properly one of "trial tactics." [303 A.2d at 419 (citation omitted)].
Similarly, in People v. Mozee, 723 P.2d 117 (Colo. 1986), the Colorado Supreme Court held that although a waiver of the right to remain silent resulting from an election to testify must be made by defendant personally and must be made voluntarily and knowingly, it does not necessarily follow "that as a condition essential to a valid waiver, the trial judge must advise the defendant of his right not to testify and of the consequences that attend the waiver of that right before the defendant takes the stand." Id. at 124. The Mozee court emphasized that:
It is a duty of defense counsel, however, to ensure that the defendant has been advised of the full array of matters associated with the basic constitutional right to remain silent to the extent that they relate to the defendant's circumstances. This includes the benefits flowing from an exercise of that right at trial and the consequences stemming from a waiver of the right. [Id. at 124].
Again, in People v. Longwith, 125 Cal. App.3d 400, 178 Cal. Rptr. 136 (Cal.Ct.App. 1981), it was held that "when a defendant is represented by counsel, there is no duty owed to him by the trial court to offer the accused any advice in his election to testify or not to testify or to explain the ramifications of either choice." Id., 178 Cal. Rptr. at 143. "The privilege against self-incrimination may be waived and is waived if the defendant takes the stand to testify as a witness." Ibid. Several other jurisdictions have likewise refused to impose upon the trial courts the obligation to advise a defendant represented by counsel who intends to take the stand that he has a right not to testify. See Knowles v. State, 364 So.2d 712, 714 (Ala. Crim. App. 1978); Crawford v. State, 144 Ga. App. 622, 241 S.E.2d 492 (Ct.App. 1978); People v. Ring, 89 Ill. App.2d 161, 232 N.E.2d 23 (App.Ct. 1967); Di Pietro v. State, 31 Md. App. 392, 356 A.2d 599 (Ct.Spec.App. 1976); Glazier v. State, 30 Md. App. 647, 353 A.2d 674 (Ct.Spec.App. 1976); State v. McKenzie, supra, 17 Md. App. 563, 303 A.2d 406 (Ct.Spec.App. 1973); Stevens v. State, 232 Md. 33, 192 A.2d 73 (Ct.App. 1963); People v. Martin, 150 Mich. App. 630, 389 N.W.2d 713, 717 (Ct.App. 1986); People *426 v. Simmons, 140 Mich. App. 681, 364 N.W.2d 783 (Ct.App. 1985); Cf. State v. Poindexter, 69 N.C. App. 691, 318 S.E.2d 329 (Ct.App. 1984) cert. den. 312 N.C. 497, 322 S.E.2d 563 (1984); People v. Jackson, 88 Cal. App.3d 490, 151 Cal. Rptr. 688 (Ct. App. 1978).
United States ex rel. Santana v. Fenton, 570 F. Supp. 752 (D.N.J. 1981) rev'd on other grounds 685 F.2d 71 (3d Cir.1982), cert. den. 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983), relied upon by defendant, does not persuade us to reach a contrary conclusion. In Santana, the Federal District Court in dicta noted that where a defendant indicates a desire to testify, a voir dire examination of defendant is vital to assure that he has voluntarily and intelligently relinquished a known right of constitutional magnitude. The court opined that the record should reflect an awareness on defendant's part of the consequences of testifying and that he has voluntarily and intelligently waived his right not to testify. However, at issue in Santana was whether the defendant had waived his right to testify where he had not requested to take the stand and testify until after the State had completed its summation. The court rejected defendant's request to testify at that time and defendant never took the stand. Therefore, the issue of whether a defendant represented by counsel need be advised of his right not to testify was never before the court and the court's discussion in that regard is of no precedential value. Moreover, the dicta is in conflict with the authorities cited above and we disagree with it.
Consequently, we hold that where a defendant is represented by counsel the trial court does not have a duty to advise defendant of his right not to testify or to explain the consequences that his testimony may produce.
Beyond this, even assuming that there is a duty upon a trial court to inform a defendant represented by counsel of his Fifth Amendment privilege against self-incrimination and defendant would have refused to testify if so advised, the failure *427 to notify defendant here was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 22-25, 87 S.Ct. 824, 827-828, 17 L.Ed.2d 705, 710-711 (1967); Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); State v. Macon, 57 N.J. 325, 337-340 (1971). Defendant testfied in an attempt to refute evidence presented by the State and to present his story to the jury. Thus, in view of the clear tactical decision to testify made by defendant with counsel and the overwhelming evidence of guilt, any error on the trial court's part in failing to advise defendant of his right against self-incrimination was not "clearly capable of producing an unjust result." See R. 2:10-2; State v. LaPorte, 62 N.J. 312, 318-319 (1973); Cf. State v. McCloskey, 90 N.J. 18, 30-32 (1982).

III.
Defendant further contends that the trial court committed reversible error by admitting evidence of his driving record. On cross-examination, defendant testified to having previously received tickets for speeding, disobeying traffic signals and driving carelessly. Moreover, in testifying that he had "training not to try to beat the light," defendant admitted that, about six months prior to the accident, he had attended a police-administered driving program as a result of accumulating points on his license. The State then attempted to introduce an abstract of defendant's driving record. Defense counsel objected and argued that the prejudice occasioned by such evidence would outweigh any probative value it might have. The State, on the other hand, maintained that the abstract (1) was evidence of habit or custom, and (2) bore upon defendant's credibility and was therefore admissible on both grounds. The trial court resolved the issue in the State's favor and admitted the abstract of his driving record in evidence.
Defendant argues that the trial court erred in admitting his driving record as evidence of habit or custom. Noting *428 the varied nature of the violations for which he had been cited, defendant claims that the abstract was not indicative of a "regular response to a repeated situation." Thus, defendant concludes, the driving record did not constitute habit as defined in Evid.R. 50 and, therefore, should not have been admitted under Evid.R. 49. Claiming that the admission of such evidence was highly prejudicial, defendant seeks a new trial.
Evid.R. 49 provides:
Evidence of habit or custom whether corroborated or not is admissible to prove conduct on a specified occasion in conformity with the habit or custom.
Evid.R. 50 similarly states:
Evidence of specific instances of conduct is admissible to prove habit or custom if the evidence is of a sufficient number of such instances to warrant a finding of such habit or custom.
A careful reading of these rules and the comments thereto makes clear that defendant's driving record should not have been admitted as evidence of habit or custom. Particularly germane is Comment 1 to Evid.R. 50 wherein it is noted:
If a party, in his effort to use evidence of habit under Rule 49 to prove a person's conduct in conformity with his habit, seeks to introduce specific act evidence, an offer of proof should be made that the evidence will be probative of habit, and not of character. If the evidence has relevance only to an individual's character for care or skill, it should be excluded if it is being offered as circumstantial proof that the individual was or was not careful on a particular occasion.
To help distinguish between character evidence, which is inadmissible to prove conduct on a specific occasion, Evid.R. 48, and evidence of habit, which is admissible to prove conduct on a specific occasion, Comment 2 to Evid.R. 49 is instructive:
Examples of the use of habit or custom evidence may put the distinction between habit and character into clearer focus. Evidence that a person who drove an automobile on a particular road would customarily stop his vehicle at a certain place when confronted by a red traffic light could be admissible under Rule 49 to show that on a given time he stopped his car in accordance with his customary behavior. Cf. Mathis v. Fantozzi, 105 N.J. Super. 181 (App.Div. 1969). On the other hand, evidence that a person generally drove carefully would not be admissible to prove how he drove on a particular occasion.
A principle which may be derived from the above examples is that general evidence of careless driving is inadmissible *429 to show how someone drove on a particular occasion, while evidence that an individual repeatedly drove carelessly on a particular part of a particular road is admissible under Evid.R. 49. Based upon this corollary, the abstract of defendant's motor vehicle violations should not have been admitted.
Although the trial court erred in admitting the abstract of the record in evidence, the error was harmless beyond a reasonable doubt. It was not "clearly capable of producing an unjust result." R. 2:10-2; State v. Lair, 62 N.J. 388, 392 (1973); State v. Hock, 54 N.J. 526, 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). Before the abstract was introduced, the State had questioned defendant without objection as to his driving record. Thus, much of the challenged evidence was already before the jury prior to the introduction of the abstract. Beyond this, proof of defendant's guilt was overwhelming, and, therefore there was no real possibility that the error "led the jury to a result that it otherwise might not have reached." State v. Macon, supra, 57 N.J. at 336.

IV.
Defendant now claims for the first time on appeal that the trial court failed to instruct the jury that character evidence may create a reasonable doubt as to defendant's guilt and that this alleged failure constitutes plain error warranting a new trial. See Model Jury Charge  Criminal § 4.120 Testimony of Character Witness (1977). As part of its case, the defense put on five witnesses to testify as to defendant's character, particularly with respect to sobriety and truthfulness. Consequently, the trial court instructed the jury that:
There have been also on behalf of the defendant several people who testified which we will call character witnesses. They do not have any evidence to present to the incident itself, but only as to their relationship or knowledge of defendant. Character witnesses come into court to testify as to the general habit or custom of the person whose character traits they are testifying to. They testify also as to the person's reputation within the community as character traits and his reputation for truthfulness in the community as to their *430 knowledge of such. Again, you've heard that testimony. It is up to you to evaluate and weigh that testimony and to determine in your own minds what weight you will give to that testimony and how that testimony will affect the defendant's testimony in this case.
The law is settled in New Jersey that "[e]vidence of good character may be sufficient in itself to raise a doubt as to the guilt of the defendant, and it must be considered along with all the other evidence in the case...." State v. Siciliano, 21 N.J. 249, 260-261 (1956). "[T]he importance of this type of evidence is such that it is generally considered substantial error to permit it to go before the jury (after appropriate request to charge) without specific instruction as to its purpose and relevancy to the issue...." State v. Micci, 46 N.J. Super. 454, 459 (App.Div. 1957).
Here, the trial court instructed the jurors that "[i]t [was] up to them to evaluate and weigh [the character] testimony and to determine in [their] own minds what weight [they] will give to that testimony." Moreover, the trial court had previously charged the jury with respect to "reasonable doubt" as follows:
The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt.
The defendant is not required to prove his innocence. The burden of proving the defendant guilty of every element of the crime charged is upon the State. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty. If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty.
Now, the term reasonable doubt means a doubt based upon reason and common sense. It is a doubt for which a reason can be given arising from a fair and rational consideration of the evidence or want of evidence. It means such a doubt as would cause a man of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life. A reasonable doubt is not a doubt which is merely fanciful or speculative such as a skeptical mind might suggest. A doubt which ignores a reasonable interpretation of the evidence or which arises merely from sympathy or from fear to return a verdict of guilt is not a reasonable doubt. A reasonable doubt is not merely a doubt such as may be conjured up in the mind of one desiring to escape the responsibility of a decision.

*431 While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth and give the defendant the benefit of a reasonable doubt if it arises in your minds after you have carefully considered all of the evidence in the case. (Emphasis added).
Examined together, these portions of the charge reveal that the jury was instructed to consider all of the testimony which would include that of the character witnesses, and to acquit defendant if any of the evidence created in their minds a reasonable doubt as to defendant's guilt. Thus, even if this court were to overlook defendant's failure to make a specific request to charge as to character evidence, See United States v. Antonelli Fireworks Co., 155 F.2d 631, 639-640 (2d Cir.1946), cert. den. 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946), or to object to the substance of the character evidence instruction given by the trial court, defendant's claim that the charge was deficient to the point of being capable of producing an unjust result must be rejected.
This conclusion is in no way vitiated by United States v. Quick, 128 F.2d 832 (3d Cir.1942), the case upon which defendant principally relies. Quick is factually distinguishable and its holding does not compel a reversal of defendant's convictions. In Quick, the State's evidence consisted entirely of testimony of self-confessed accomplices. Thus, the defendant in that matter called several character witnesses on his behalf and requested the following charge:
"It is the right of a person charged with crime to have all relevant testimony, including that relating to his good character or reputation, considered by the jury in every case, and if, on such consideration, there exists reasonable doubt of his guilt, even though that doubt be engendered merely by his previous good repute, he is entitled to an acquittal." [Id. at 835].
Instead of honoring this request, the district court merely charged the jury that, "`You may consider the character witnesses, what the weight and effect of their testimony is to be, what you want to give it.'" Ibid. Appellant was convicted on *432 a charge of conspiracy and appealed. The Third Circuit Court of Appeals reversed and emphasized that the proper instruction regarding character evidence was especially important where, as there, the government was relying exclusively on the testimony of the admitted accomplices.
Here, the State's evidence did not consist of testimony by a confessed accomplice, a factor which received great emphasis from the court in the Quick case. Moreover, as pointed out above, defendant did not make a request to charge with respect to character evidence and did not object to the charge after it was delivered to the jury. Further, the charge considered as a whole afforded the jury an opportunity to fully and fairly consider all the evidence in determining whether or not there was reasonable doubt with respect to defendant's guilt. Beyond this, even assuming error with respect to the charge on character evidence, it was harmless beyond a reasonable doubt. As previously stated, the proof of defendant's guilt was overwhelming and there was no real possibility that the error "led the jury to a result it otherwise might not have reached." State v. Macon, supra, 57 N.J. at 336.

V.
Defendant was committed to concurrent sentences aggregating 15 years with a seven-and-one-half year period of parole ineligibility. Claiming that the aggravating factors did not substantially outweigh the mitigating factors in this case, defendant seeks a reduction in his sentences. He maintains that the trial court improperly considered the death of the victims, which is an element of the crimes of which he was convicted, as an aggravating factor. Furthermore, defendant alleges that the trial court's finding that he would continue to commit similar acts in the future is unsupported by the record. Defendant also contends that the trial court improperly considered as an aggravating factor his attitude at the scene of the *433 accident and at the hospital. Finally, defendant asserts that the trial court erroneously failed to consider in mitigation the fact that he was regularly employed, helped support his mother and was well-liked by his peers. Taking all these factors into account, defendant maintains that the mitigating factors substantially outweigh the aggravating factors and that his sentences were manifestly excessive and unduly punitive and should be reduced to concurrent seven-year terms.
The trial court imposed presumptive terms of 15 years upon defendant even though he was exposed to a 20-year maximum on each count. We are satisfied that the imposition of the seven-and-one-half year period of parole ineligibility term on top of the presumptive 15 year term for the aggravated manslaughter conviction under Count One was contrary to State v. Kruse, 105 N.J. 354 (1987). Not only did the trial court fail to state separately its reasons for the imposition of the parole ineligibility term, the imposition of such a term in the circumstances of this case constituted a mistaken exercise of sentencing discretion by the trial court. Defendant is a first offender; his convictions for aggravated manslaughter arising out of this automobile accident constitute his first criminal convictions. In addition, the trial court's consideration that "[t]he serious nature and circumstances of this offense ... including the injury inflicted on the two victims which is the death of both of those poor individuals are aggravating circumstances of extreme importance," was improper and contravenes the sentencing criteria set forth in State v. Yarbough, 100 N.J. 627, 644 (1985), that "there should be no double counting of aggravating factors." See also State v. Reed, 211 N.J. Super. 177, 188 (App.Div. 1986); State v. Pavin, 202 N.J. Super. 255, 266-267 (App.Div. 1985). The aggravating factors of the death of the two victims were essential elements of and raised the crimes to aggravated manslaughter. To consider such factors again in determining punishment ignores the criteria set forth *434 in Yarbough and tends to undermine the salutary goal of uniformity in sentencing.
Finally, we would point out as Justice Pollock emphasized in State v. Kruse, supra, "we expect it will be a rare case in which the sentencing court imposes a period of parole ineligibility on top of a presumptive sentence." Kruse, 105 N.J. at 362. Here, this is not such a case and the imposition of a parole ineligibility term constitutes a miscarriage of justice and shocks the judicial conscience. See State v. Roth, 95 N.J. 334, 364-366 (1984). We, therefore, vacate the seven-and-one-half year period of parole ineligibility term imposed as part of the sentence on the First Count.
However, we are satisfied, contrary to defendant's argument, that the trial court was not required to have downgraded defendant's first degree aggravated manslaughter convictions to second degree crimes and to have sentenced him accordingly. It is only where the trial court is "clearly convinced" that the aggravating factors are "substantially outweighed" by the mitigating factors and "in the interest of justice", the trial court may "downgrade" a defendant's conviction and sentence him to the term applicable to one degree lower than the crime of which he was convicted. N.J.S.A. 2C:44-1f(2). The trial court did not make such a finding and the facts do not compel such a determination.

VI.
We have carefully considered the remaining contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2).
Accordingly, except to modify the sentence imposed on the First Count to vacate the period of parole ineligibility, the convictions and sentences imposed thereon are affirmed. We remand the matter to the trial court for the entry of an amendatory judgment in accordance with this opinion.
NOTES
[1] After defendant was found guilty of both counts of aggravated manslaughter, the trial court granted him a new trial on this ground. We granted the State leave to appeal and elected to consider the appeal simultaneously with the motion for leave to appeal on the papers alone pursuant to R. 2:11-2. We thereupon summarily reversed the grant of the new trial because the motion for a new trial was not made within the ten day period provided by R. 3:20-2 and remanded the matter to the trial court for sentencing. We did not consider and decide the issue now raised as to the duty of the trial court to advise a defendant represented by counsel of his right not to testify. Consequently, the "law of the case" doctrine does not bar our determination of that issue now. Cf. State v. Reldan, 100 N.J. 187 (1985); State v. Hale, 127 N.J. Super. 407 (App.Div. 1974); State v. Stewart, 196 N.J. Super. 138 (App.Div. 1984), certif. den. 99 N.J. 212 (1984).