240 N.J. Super. 330 (1990)
573 A.2d 464
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES LENTINI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 15, 1989.
Decided February 15, 1990.
Before Judges GAULKIN, DREIER and D'ANNUNZIO.
Winne, Banta, Rizzi, Hetherington & Basralian, attorneys for appellant (Kevin P. Cooke, of counsel and on the brief).
Ronald S. Fava, Prosecutor Passaic County, attorney for respondent (Steven E. Braun, Senior Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
*331 Defendant has appealed from a DWI conviction. N.J.S.A. 39:4-50(a). The municipal court of the Borough of Totowa and the Law Division successively imposed a $250 fine, $15 court costs, a $100 enforcement surcharge, and a six-month suspension of driving privileges.
Defendant was stopped for speeding. The trooper noted some outward signs of intoxication, arrested defendant, and later administered two breathalyzer tests. The readings were both exactly 0.10%. Although there was some additional evidence of intoxication (bloodshot eyes, mistakes in reciting the alphabet and some balance problems), defendant and his expert witness explained that defendant had physical disabilities that may have accounted for these symptoms. The municipal court and Law Division judges expressly declined to base their rulings upon any evidence other than the breathalyzer test results. Thus, defendant was convicted under that part of the statute which makes it an offense to operate "a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood...." This part of the statute is referred to as establishing a per se offense.
Defendant's expert witness and the arresting trooper testified that the breathalyzer has an accuracy of plus and minus 0.01%. Therefore, the readings of 0.10% actually reflected a blood-alcohol concentration anywhere between .09 and .11%. The narrow issue is whether a 0.10% reading from a properly operated and properly functioning breathalyzer is sufficient to support a conviction under the per se section of the statute in light of the 0.01% tolerance. We deem this issue to present a question of legislative intent.
The per se offense was enacted in 1983 as part of a series of amendments to New Jersey's intoxicated driving statutes. It was established, in part, as a result of mounting scientific evidence that:

*332 Most persons are impaired at 0.08 percent blood alcohol concentration, and it is generally agreed that almost everyone experiences reduced driving ability at and above 0.10 percent blood alcohol concentration.... [A] driver at 0.10 percent blood alcohol concentration is five to six times more likely to cause a crash than an alcohol-free driver. [State v. Tischio, 107 N.J. 504, 516, 527 A.2d 388 (1987), quoting MOTOR VEHICLE STUDY COMMISSION, REPORT TO THE SENATE AND THE GENERAL ASSEMBLY OF 1975 at 141-142.]
The per se offense is committed if a person with a 0.10% blood alcohol concentration operates a motor vehicle. No other evidence of intoxication or impaired ability to drive is necessary. State v. D'Agostino, 203 N.J. Super. 69, 73, 495 A.2d 915 (Law Div. 1984).
Tests for the determination of blood-alcohol levels, primarily the breathalyzer, have become essential tools in the implementation and enforcement of New Jersey's intoxicated driving statutes. State v. Tischio, 107 N.J. 504, 517, 527 A.2d 388 (1987), app. dism. 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). The New Jersey Supreme Court examined the accuracy and reliability of breathalyzer tests for the first time in State v. Johnson, 42 N.J. 146, 199 A.2d 809 (1964). In Johnson, the Court recognized that breathalyzers were scientifically reliable and accurate tools to determine the alcohol content of the blood. Id. at 171, 199 A.2d 809. The Court held that breathalyzer results are admissible upon a showing that (1) the equipment was in proper working order; (2) the operator was qualified to administer the test; and, (3) the test was correctly administered. Ibid.
The New Jersey Supreme Court addressed another challenge to breathalyzer accuracy in Romano v. Kimmelman, 96 N.J. 66, 474 A.2d 1 (1984). The challenge involved the susceptibility of particular breathalyzer models to radio frequency interference. In discussing the challenge the Court ruled that "[t]he Smith and Wesson Breathalyzer models 900 and 900A are found to be scientifically reliable and accurate devices for determining the concentration of blood alcohol. Such scientific reliability shall be the subject of judicial notice in the trial of all *333 cases under N.J.S.A. 39:4-50." Id. at 82, 474 A.2d 1. It is noteworthy that the Court also specifically held that:
the results of a model 900A breathalyzer test may be admitted in evidence and form a basis upon which a conviction under N.J.S.A. 39:4-50 may be obtained .. ., provided either of two conditions of admissibility is satisfactorily established. The first condition involves the two-test procedure. If the breathalyzer results consist of two tests or readings within a tolerance of 0.01 percent of each other that condition will have been met. [Romano, supra, 96 N.J. at 87-88, 474 A.2d 1; emphasis supplied.]
In Tischio, supra, the Court once again considered the role of breathalyzer tests. The Court observed that N.J.S.A. 39:4-50(a) "expresses a clear legislative purpose to rely exclusively upon breathalyzer test results whenever possible." Tischio, supra, 107 N.J. at 516, 527 A.2d 388. The Court supported this observation by noting that other sections of New Jersey's intoxicated driving statutes demonstrate the Legislature's reliance upon the breathalyzer in the administration of the regulatory scheme. Id., n. 7. N.J.S.A. 39:4-50.1 establishes presumptions regarding a defendant's intoxication depending upon the weight of alcohol in a defendant's blood "as shown by chemical analysis of the defendant's blood, urine or breath."[1]N.J.S.A. 39:4-50.2 provides that "[a]ny person who operates a motor vehicle on any public road ... in this State shall be deemed to have given his consent to the taking of samples of his breath," and N.J.S.A. 39:4-50.3 establishes a system of administration and record keeping for "[c]hemical analysis of the arrested person's breath." N.J.S.A. 39:4-50.4a directs that "[t]he municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of [N.J.S.A. 39:4-50], shall refuse to submit to [a breath test]."
*334 In Tischio the Supreme Court reaffirmed the breathalyzer's critical role in this statutory scheme when it held that "... [N.J.S.A. 39:4-50(a)] prescribes an offense that is demonstrated solely by a reliable breathalyzer test administered within a reasonable period of time after the defendant is stopped for drunk driving, which test results in the proscribed blood-alcohol level." 107 N.J. at 522, 527 A.2d 388.
It is conceded that Romano and Tischio did not directly address defendant's contention in the present case that the statute by its terms requires a 0.10% "blood alcohol concentration" and not merely a 0.10% breathalyzer reading. However, as previously indicated, the issue is one of legislative intent, and Tischio's comments regarding the search for that intent are relevant:
It is settled that the most important factor in construing a statute is the intent of the Legislature. Perez v. Pantasote, Inc., 95 N.J. 105, 114 [469 A.2d 22] (1984). We have consistently stated that:
In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law. [N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972).]

See also Wollen v. Borough of Fort Lee, 27 N.J. 408, 418 [142 A.2d 881] (1958) ("The inquiry in the final analysis is the true intention of the law; and, to this end, the particular words are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the law that controls."). We are mindful of the fact that N.J.S.A. 39:4-50(a) is penal in nature, and, therefore, should be strictly construed. State v. Grant, 196 N.J. Super. 470, 480-81 [483 A.2d 411] (App.Div. 1984). Nevertheless, even when dealing with a criminal statute, "the goal of the interpretive process is to ascertain the intent of the legislature. `All rules of construction are subordinate to that obvious proposition.'" Id. at 481 [483 A.2d 411] (quoting State v. Provenzano, 34 N.J. 318, 322 [169 A.2d 135] (1961)). Thus, "the words of [a penal statute] are to be accorded a rational meaning in harmony with the obvious intent and purpose of the law." State v. Brown, 22 N.J. 405, 415 [126 A.2d 161] (1956). [107 N.J. at 510-511, 527 A.2d 388.]
In Tischio the Court described what it found to be the "dominant legislative purpose" of N.J.S.A. 39:4-50 et seq.:
The overall scheme of these laws reflects the dominant legislative purpose to eliminate intoxicated drivers from the roadways of this State. To this end, the *335 Legislature, working in tandem with the courts, has consistently sought to streamline the implementation of these laws and to remove the obstacles impeding the efficient and successful prosecution of those who drink and drive. One such impediment has been the introduction of conflicting expert testimony at trials under N.J.S.A. 39:4-50(a). See State v. Johnson, supra, 42 N.J. at 167 [199 A.2d 809]. The vast majority of statutory revisions in this area have been directed towards minimizing, if not eliminating, the necessity for this kind of evidence. [Tischio, supra, 107 N.J. at 514, 527 A.2d 388; emphasis added.]
The Court frequently reinforced the theme of legislative reliance on the breathalyzer's bright line. "[T]he determination of blood-alcohol levels through chemical or breathalyzer tests is the linchpin of New Jersey's drunk-driving statutes." Id. at 510, 527 A.2d 388. "N.J.S.A. 39:4-50(a) .... expresses a clear legislative purpose to rely exclusively upon breathalyzer test results whenever possible." Id. at 516, 527 A.2d 388; footnote omitted. "Once again, the primary purpose behind the 1983 Amendment to the statute was to streamline the administration of the penal and regulatory laws in this area by eliminating the necessity for expert testimony at trial." Id. at 517, 527 A.2d 388.
In the present case, defendant seeks to blunt the Legislature's resolve by giving new vigor to the probative value of expert testimony[2] in the interest of eliminating a possible deviation of 1/100 of a per cent.[3] If defendant's contention is *336 adopted, the presumptions established by N.J.S.A. 39:4-50.1(1) and (2), (see footnote one, supra), as well as the per se bright line of 0.10% would have to be adjusted in derogation of the statutes' objective standards. The adjustment would have to be made on a case-by-case basis depending on the expert testimony introduced in each case. No expert is bound by the opinion evidence in the present case regarding any breathalyzer's margin of deviation. Thus, the carefully constructed regulatory scheme will in many cases again become a battle of the experts. As Tischio demonstrated, that would be inconsistent with the Legislature's intent.
Moreover, if it cannot be determined, as appears to be the case, whether the tolerance is to be added to or subtracted from the breathalyzer reading, then, contrary to the statute, a 0.11% reading will be required to establish the per se violation.
Subsequent to the preparation of this opinion, the Supreme Court decided State v. Downie, 117 N.J. 450, 569 A.2d 242 (1990), rejecting a challenge to the reliability of breathalyzers based on partition ratio variability. The Court's conclusion "that the Legislature intended the breathalyzer to be a measure of inebriation and not just blood alcohol (117 N.J. at 468, 569 A.2d 242) eliminates any doubts regarding the use of the test results in the present case to establish a per se violation.
We conclude that a per se violation is established by a breathalyzer reading of 0.10% provided the test instrument is functioning properly, is properly operated by a qualified person and the requirements of Tischio, Romano and Johnson have been satisfied.[4]
Affirmed.
NOTES
[1] N.J.S.A. 39:4-50.1(1) specifies that if the reading is 0.05% or less "it shall be presumed that the defendant was not under the influence of intoxicating liquor." N.J.S.A. 39:4-50.1(2) states that if the reading is "in excess of 0.05% or less than 0.10% ... such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant."
[2] "We concluded [in State v. Johnson,] that expert testimony attacking the accuracy and reliability of breathalyzer tests ... had virtually no probative value." Tischio, 107 N.J. at 517-518, 527 A.2d 388.
[3] Defendant's expert testified that his knowledge of the 0.01 tolerance came from a text published by the American Medical Association and the National Safety Council titled Alcohol and the Impaired Driver. Defendant included a three-page excerpt from the text in his appendix. The excerpt includes a discussion of a number of studies between 1957 and 1964 comparing breathalyzer results with blood test results. To conclude from this text that the breathalyzer tolerance is 0.01 is an oversimplification. Moreover, the excerpt's last paragraph states:

It may be concluded that on comparison of a variety of techniques for both blood and breath analysis, there is an excellent correlation of results obtained, and that the breath methods commonly used are entirely reliable when performed by well-trained, competent operators.
[4] See State v. Shuping, 312 N.C. 421, 323 S.E.2d 350 (1984); State v. Rucker, 297 A.2d 400 (Del. Super. Ct. 1972). But see State v. Keller, 36 Wash. App. 110, 672 P.2d 412 (1983); State v. Boehmer, 1 Haw. App. 44, 613 P.2d 916 (1980); but cf. People v. Campos, 138 Cal. App.3d Supp. 1, 188 Cal. Rptr. 366 (1982); State v. Bjornsen, 201 Neb. 709, 271 N.W.2d 839 (1978). Campos and Bjornsen involved the margin of error in blood testing rather than breath testing. We have not discussed these cases in detail because resolution of the issue is a matter of New Jersey legislative intent.