IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1997 SESSION

FILED

October 16, 1997

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,    )
    )
    Appellee,    )    No. 01C01-9605-CC-00209
    )
    )    Coffee County
v.    )
    )    Honorable Gerald L. Ewell, Sr., Judge
    )
MARK T. SCISNEY,    )    (DUI While Driving Commercial Vehicle)
    )
    Appellant.    )


## CONCURRING OPINION


I concur in the results reached in the lead opinion. However, I am reluctant to adopt the conclusion that under Tennessee law, an Intoximeter 3000 reading of .04 percent is sufficient, by itself, to prove beyond a reasonable doubt that the defendant was driving with a .04 percent blood alcohol concentration.

As for the sufficiency of the evidence in this case, I do not believe that the conviction is based solely upon the breath test result of .04 percent. In the light most favorable to the state, the evidence reflects that the defendant had a couple of tall beers in Georgia several hours earlier. The officers smelled an odor of alcohol upon the defendant's person when he was stopped in Coffee County. The officers waited thirty to forty minutes before administering the breath test. These facts, coupled with the breath test reading of .04 percent, lead me to conclude that the evidence was sufficient to convict the defendant beyond a reasonable doubt for driving a commercial vehicle in Coffee County, Tennessee, with, at least, a .04 blood alcohol concentration.

On the other hand, I am not ready to concede that the Intoximeter 3000 reading in this case provides sufficient proof, by itself, to find beyond a reasonable doubt that the defendant's blood alcohol concentration was, in fact, .04 percent. The fact that in any given test, the Intoximeter 3000 reading has a plus or minus .005 percent range of deviation from the actual blood alcohol concentration means that the actual concentration could be .035 percent when the test registers a .04 percent result. Also, this deviation, coupled with the instrument's rounding down to the nearest hundredth, means that an actual concentration of .054 percent could register as .04 percent, as well. This reflects a total deviation range of 20 thousandths of one percent for any given breath test result. In other words, any given test that registers .04 percent has a 25 percent chance of reflecting an actual concentration of less than .04 percent. In my opinion, the test, alone, cannot justify a finding beyond a reasonable doubt that a person's blood alcohol concentration is actually .04 percent. Put another way, I do not believe that it would allow any rational juror's mind to rest easily upon the moral certainty of the actual concentration being .04 percent.

Moreover, I am not convinced that the lead opinion's interpretation of legislative intent based upon the wording of our statutes is wholly accurate. I note that T.C.A. § 55-10-408 provides that a rebuttable presumption of intoxication and impairment arises upon "evidence that there was . . . ten-hundredths of one percent (.10%) or more by weight of alcohol in the defendant's blood . . . " relative to driving under the influence of an intoxicant. Thus, under State v. Sensing, 843 S.W.2d 412 (Tenn. 1992), a reading of .10 percent from an Intoximeter 3000 would constitute such "evidence" that would be probative of the issue of intoxication, at least as a matter of legal inference.

Given the legislature's wording in the rebuttable presumption statute, I believe it to be significant that no such wording exists in the per se offense statutes,

2

which expressly refer to the "blood alcohol concentration" amount, not "evidence" of such amount. See T.C.A. §§ 55-10-401(a)(2) and 55-50-408. Obviously, if the legislature had meant for the prohibited blood alcohol concentration to be that as evidenced by a chemical test, it could have said so.

Finally, I see some significance in the fact that the cases upon which the lead opinion relies relate to .10 percent per se provisions that are alternatives to the driving under the influence provisions. As indicated in State v. Lentini, 573 A.2d 464, 465 (N.J. Super. Ct. App. Div. 1990), studies reflect that a high percentage of people are impaired at .08 percent and almost all are impaired at .10 percent. Thus, as a matter of practice and policy, it makes little difference to the dangerous risk involved whether a person's blood alcohol concentration is actually .095 percent rather than .10 percent. However, there is no similarly proven relationship between .035 percent and .04 percent. I cannot assume that the legislature thought them to be the same for commercial driving purposes.

In sum, I concur in affirming the judgment of conviction given the sufficiency of the convicting evidence. However, I refrain from concluding that the Intoximeter 3000 test result of .04 percent, alone, would be sufficient to convict under T.C.A. § 55-50-408.

_____
Joseph M. Tipton, Judge

3