707 A.2d 159

STATE OF NEW JERSEY, PLAINTIFF/RESPONDENT,
v. GARY LUTZ, JR., DEFENDANT/APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 3, 1998—Decided March 16, 1998.

318

Before Judges CONLEY, WALLACE and CARCHMAN.

*John Menzel*, argued the cause for appellant.

*Thomas Cannavo*, Assistant Prosecutor, argued the cause for respondent (*E. David Millard*, Ocean County Prosecutor, attorney; *Mr. Cannavo*, of counsel and on the brief).

The opinion of the court was delivered by

WALLACE, Jr., J.A.D.

Defendant was found guilty in the Point Pleasant Borough Municipal Court of driving under the influence of alcohol, *N.J.S.A.* 39:4–50, and careless driving, *N.J.S.A.* 39:4–97. He was acquitted of a seat belt charge. After merger, for his third DWI conviction, defendant was sentenced to serve 180 days in jail; to pay a $1,000 fine, a $100 surcharge, a $50 V.C.C.B. penalty, a $75 Safe Neighborhood Services Fund surcharge, a $25 court costs, and had his driver's license suspended for ten years. Defendant appealed to the Law Division where, following a trial *de novo* on the record below, he was again found guilty. The judge separated the careless driving offense, imposed a separate fine and costs on the careless driving offense, and imposed the same sentence on the drunk driving charge as in the Municipal Court. Defendant's sentence was stayed pending appeal.

Defendant seeks a reversal of his conviction based on the following grounds:

I. BLOOD TEST RESULTS HERE ARE NOT FORENSICALLY RELIABLE AND, THEREFORE INADMISSIBLE DUE TO THE STATE'S FAILURE TO SHOW (A) DUPLICATE TESTING, (B) ADHERENCE TO THE BLOOD ANALYZER MANUFACTURER'S CALIBRATION PROTOCOL'S AND (C) SERUM ALCOHOL RESULTS FREE FROM INTERFERENCE FROM OTHER SUBSTANCES.

II. THE EVIDENCE FAILED TO ESTABLISH PROBABLE CAUSE TO ARREST DEFENDANT.

III. THIS COURT SHOULD DISMISS THE "DUI" COMPLAINT HERE BECAUSE IT FAILS TO ADEQUATELY DESCRIBE THE OFFENSE WITH WHICH DEFENDANT IS CHARGED, AND THUS PREVENTS HIM FROM PREPARING HIS DEFENSE.

IV. THE STATE FAILED TO PROVE CARELESS DRIVING BEYOND REASONABLE DOUBT.

V. CONVICTION OF BOTH DWI AND CARELESS DRIVING VIOLATED DEFENDANT'S RIGHT TO BE FREE OF DOUBLE JEOPARDY IN

THAT SUCH A RESULT FRACTIONALIZED CONDUCT COMMON TO BOTH CHARGES AND RESULTED IN MULTIPLE PUNISHMENTS FOR A SINGLE ACT.

VI. DEFENDANT WAS AND IS ENTITLED TO A JURY TRIAL.

We have carefully considered each of these contentions and the arguments advanced by defendant in support of them and find that, except with regard to the arguments addressed to his careless driving conviction, they are without merit. *R.* 2:11–3(e)(2). We affirm the drunk driving conviction and sentence, and reverse the careless driving conviction.

Defendant was driving his vehicle at approximately 7:20 p.m. on November 11, 1995, when he had a head-on collision in the opposite lane with a vehicle driven by Michael Bodden. It was a windy, drizzly night and the cars had been traveling on a straight stretch of a two-lane road in a thirty-five miles per hour speed zone. Defendant exited his car and was bleeding from the head. He spoke with Bodden and apologized for the accident, explaining that his car had "slid." Bodden's pregnant wife was a passenger in his car, and defendant expressed concern for her. Both the Boddens smelled alcohol on defendant's breath during the conversations with defendant and so informed the police when they arrived.

Defendant told policeman Gary Colberg that he had tapped his brakes as his vehicle began to slide on the wet pavement. He said his vehicle crossed the center lane and collided with the Bodden vehicle. Defendant was taken to the hospital by ambulance. At the hospital, Colberg smelled alcohol or a medicine-type odor on defendant's breath. Colberg advised defendant of his *Miranda* [1] rights and asked if he would consent to a blood alcohol test. Defendant agreed to take the test.

A registered nurse, Diane Campbell–Cudia, drew the blood sample in the presence of Colberg, using a non-alcoholic swab.

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 444–45, 86 *S.Ct.* 1602, 1612–13, 16 *L.Ed.*2d 694, 706–07 (1966).

The laboratory results indicated a serum [2] alcohol level of 149 milligrams which is the equivalent of a blood alcohol level of .128 percent. Based on his investigation of the accident and the results of the blood test, Colberg issued several summonses to defendant.

Defendant's blood had been analyzed by the hospital on an Ekta routine chemistry analyzer. Prior to conducting the test, the medical technologist ran control tests using an Ektachem liquid performance verifier, which had been commercially prepared outside the hospital. The results indicated the control was within the acceptable standards. The hospital's Administrative Director of Laboratory Services testified that quality control and instrument repair records indicated that quality control was within range and that no repairs were done on the instruments prior to the time of testing which would have interfered with the results. However, no records were submitted specifically indicating whether the machine had been properly calibrated at the time of the test.

Thomas Brettell, Assistant Chief Forensic Scientist for the New Jersey State Police, testified that a serum alcohol level of 149 milligrams indicated a blood alcohol concentration of .128 percent. Brettell acknowledged there were differences between blood testing methods employed by the State Police for "forensic purposes" and methods used by hospitals testing for "clinical purposes," including the use by the State Police of gas chromatography, samples of whole blood rather than serum, and the maintenance of a "chain of custody."

Dr. Richard Saferstein, defendant's forensic toxicology expert, criticized the methods used to test defendant's blood. He claimed that the hospital failed to conduct duplicate testing and failed to provide documentation indicating that it had calibrated the ma-

---

[2] Serum is derived when the tube containing whole blood is spun so that the solid and fluid portions separate. The fluid portion is then analyzed providing a "serum alcohol value." Serum contains more water than does blood, so that the resulting alcohol reading is sixteen percent higher in serum than it would be in blood. A serum alcohol value is therefore converted to blood alcohol by dividing the serum value by 1.16.

chine. He noted that the manufacturer's protocol required recalibration whenever a new lot number of enzymatic chemicals was introduced and criticized the hospital for failing to test for levels of lactate and lactate dehydrogenase ("LDH"). Further, Saferstein stated that such testing was "part and parcel" of the routine blood tests performed by hospitals. He acknowledged, however, that the manufacturer's warning regarding potential interference of elevated LDH and lactate levels with blood alcohol determinations primarily concerned blood specimens taken from people who were dead or near death or specimens from individuals suffering from various clinical conditions, none of which pertained to defendant. He also acknowledged that a study which warned of the same dangers was conducted on machines made by manufacturers other than Ektachem.

Saferstein stated that the Ektachem testing method is no different than any other enzymatic type system on the market and that it is a well accepted machine in clinical chemistry. He admitted, however, he had never worked with the Ektachem machine that was used by the hospital.

Defendant did not testify at the trial. The Municipal Court judge concluded that based on the evidence presented, the machine used to test defendant's blood was reliable and that based on defendant's blood alcohol level, he was guilty of driving under the influence of alcohol. In addition, the judge concluded that as a result of defendant's failure to maintain control of his vehicle after tapping his brakes, he was guilty of careless driving.

In defendant's *de novo* appeal to the Law Division, he argued that: the blood tests were unreliable, and the State had not proven his blood alcohol level beyond a reasonable doubt; the officer had no probable cause to arrest defendant; the complaint was unconstitutionally vague; and he was subject to double jeopardy "with regard to the same conduct of a conviction of the drunk driving and careless driving count[s]". He did not raise before the Law Division the issue of whether the Municipal Court judge

wrongfully denied his request for a jury trial. The State filed no cross appeal.

At the *de novo* hearing, the Law Division judge found that the clinical tests were not shown to be less accurate than forensic tests and the machine used was generally accepted and state of the art. The judge also found there was no basis for the lactate challenge or that duplicate testing was necessary in a clinical setting with trained scientists. The judge concluded that based upon the presence of alcohol on defendant's breath, and the blood test showing a prohibited amount of alcohol in his blood, there was probable cause to arrest defendant. The judge explained:

> Here we're dealing with a hospital, and a hospital's accuracy, it seems to me, is of much greater importance than the accuracy of police officers. The importance of accurate blood testing in a hospital just can't be over emphasized. That's why we have here not a breathalyzer, but a state of the art Ekta machine utilized, and we have qualified scientists running these tests, from a nurse with 19 years' experience withdrawing the blood, to a qualified scientist running a test on it.

> I see no need for the Court to insist that the hospital run two such tests in order for the Court to accept the results. I'm satisfied that the foundational requirements for the Court to accept the results are definitely present in the record, and I accept the results.

> I find no factual basis which would render Dr. Saferstein's opinion applicable to this particular case, and I find, as the Court did below, that the defendant is guilty of 39:4–50, driving while intoxicated, and 39:4–97, careless driving.

Defendant contends that the results of his blood test are forensically unreliable and inadmissible because: (1) the hospital conducted a single blood test instead of two tests as conducted by the police using a breathalyzer; (2) the State presented no evidence that the machine had been calibrated; and (3) the hospital had not run tests for lactate or LDH.

Contrary to defendant's contentions, we find no just reason to interfere with the judge's finding that the blood test procedure here was reliable. It was undisputed that there may be differences in the methodology used for tests conducted by law enforcement for "forensic" purposes in comparison to those conducted by a hospital for "diagnostic" purposes. Nor is it disputed that in a hospital setting, the blood sample of a suspected drunken driver "should be taken in a medically acceptable manner." *State v.*

*Dyal,* 97 *N.J.* 229, 238, 478 *A.*2d 390 (1984). In the present case, both the Municipal Court judge and the Law Division judge found that the procedure utilized to test defendant's blood was sufficient to establish the reliability of defendant's test results. There was substantial credible evidence in the record to support these findings. *State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964).

Defendant's contention that the police lacked probable cause to arrest him is also without merit. After being given his *Miranda* rights, defendant consented to a blood test. As a result of defendant's consent, probable cause is not an issue. Once the officer received the blood test results, showing that defendant had an equivalent blood alcohol concentration above the proscribed .10% limit set forth in *N.J.S.A.* 39:4-50, he had probable cause to arrest defendant. Such a reading established a *per se* offense of driving under the influence even in the absence of any additional evidence of intoxication or impaired ability to drive. *See State v. Lentini,* 240 *N.J.Super.* 330, 332, 573 *A.*2d 464 (App.Div.1990). Additionally, defendant had been involved in a head-on collision where his vehicle crossed the center line and struck the other vehicle. The totality of the evidence clearly established probable cause to arrest defendant for driving under the influence of alcohol.

Defendant also contends that the summons charging him with violating *N.J.S.A.* 39:4-50 failed to adequately describe the offense. We disagree. The summons was issued on a form prescribed by the Administrative Director of the Courts in compliance with *R.* 7:6-1.[3] The summons under the offense portion described the offense as "Driving Under Influence" and referenced *N.J.S.A.* 39:4-50. This information was sufficient to inform defendant of the offense charged. *See State v. Henry,* 133 *N.J.* 104, 110, 627 *A.*2d 125 (1993). Moreover, defendant has offered no evidence that he was prejudiced by this description.

---

[3] Effective February 1, 1998, this rule is now *R.* 7:2-1(d).

■ Before turning to defendant's arguments concerning his careless driving conviction, we are satisfied that his contention that he was entitled to a jury trial is without merit. First, defendant failed to raise this issue in the Law Division. *See State v. Bogus*, 223 *N.J.Super.* 409, 419, 538 *A.*2d 1278 (App.Div.), *certif. denied*, 111 *N.J.* 567, 546 *A.*2d 497 (1988). Second, our Supreme Court has expressly rejected the argument that a defendant facing conviction as a third time offender of *N.J.S.A.* 39:4–50 is entitled to a jury trial. *State v. Hamm*, 121 *N.J.* 109, 111, 577 *A.*2d 1259 (1990), *cert. denied*, 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991).

■ Finally, we find merit in defendant's contention that the State failed to prove beyond a reasonable doubt that he was guilty of careless driving. We agree that the proofs established essentially that defendant was involved in an accident which happened in the opposite lane of travel. In finding defendant guilty of careless driving, the Law Division judge stated:

> The defendant quite clearly operated his vehicle carelessly, failed to exercise appropriate caution in the prevailing circumstances, and endangered both the persons in the other vehicle.

These conclusory remarks, however, were insufficient to establish a careless driving violation.

■ It appears that both the Municipal Court judge and the Law Division judge applied a *res ipsa loquitur* analysis in finding defendant guilty of careless driving. The doctrine of *res ipsa loquitur*, however, has no application in the determination of careless driving due to the *quasi-criminal* nature of the proceeding in which the State has the burden of proving beyond a reasonable doubt all elements of the offense. *See State v. Wenzel*, 113 *N.J.Super.*, 215, 216–18, 273 *A.*2d 395 (App.Div.1971) (the mere fact of an "otherwise unexplained jackknifing" where a tractor-trailer entering a construction area had jackknifed on the wet roadway, crossed into the opposite lane and broadsided anoth-

er truck fatally injuring the truck's driver, did not establish that the defendant had been driving carelessly.)

The careless driving statute provides:

[a] person who drives a vehicle on a highway carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving.

[*N.J.S.A.* 39:4–97.]

Here, other than the accident itself, the State only presented defendant's statement that his vehicle began to slide on the wet highway and continued to do so when he tapped his brakes. Moreover, his apology was not an admission to driving carelessly, but merely a statement that his car had slid on the wet pavement. The State presented no evidence indicating that defendant had been speeding, driving too fast for the wet road conditions, distracted or otherwise driving without due caution and circumspection. Consequently, there was insufficient evidence to support defendant's conviction for careless driving, and we reverse that conviction.

We affirm the driving under the influence conviction and sentence under *N.J.S.A.* 39:4–50(a) and vacate the stay. We reverse the careless driving conviction under *N.J.S.A.* 39:4–97 and remand to the Law Division to amend the judgment.