**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1635-15T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

  v.

GERMANIA TERRERO, a/k/a XIOMARA,

     Defendant-Appellant.

_____

     Submitted May 9, 2017 — Decided  June 8, 2017

     Before Judges Ostrer and Moynihan.

     On appeal from the Superior Court of New
     Jersey, Law Division, Hudson County,
     Indictment No. 09-07-1251.

     Joseph E. Krakora, Public Defender, attorney
     for appellant (John V. Molitor, Designated
     Counsel, on the brief).

     Esther Suarez, Hudson County Prosecutor,
     attorney for respondent (Frances Tapia Mateo,
     Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant Germania Terrero, along with Kristian Molina and

Robert Santana, were indicted for murder and related charges in

connection with the death of Terrero's paramour, Aracelio Lopez.

Terrero was tried and convicted by a jury of the lesser included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4a(1); two counts of first-degree felony murder, in the course of a robbery and in the course of a burglary, N.J.S.A. 2C:11-3a(3); first-degree robbery and conspiracy to commit first-degree robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2; second-degree burglary and conspiracy to commit second-degree burglary, N.J.S.A. 2C:18-2 and N.J.S.A. 2C:5-2; and related theft and weapons charges. She was sentenced to thirty years in prison. We affirmed the conviction. State v. Terrero, No. A-0399-11 (App. Div. June 4, 2013). Her timely filed post-conviction relief petition was denied by the trial court without an evidentiary hearing.

On appeal, defendant raises the following arguments:

> I. THIS COURT SHOULD REVERSE THE LAW DIVISION'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S TRIAL ATTORNEY WAS INEFFECTIVE FOR FAILING TO ADVISE DEFENDANT TO TESTIFY.
>
> II. THIS COURT SHOULD REVERSE THE LAW DIVISION'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S TRIAL ATTORNEY WAS INEFFECTIVE FOR FAILING TO CONDUCT AN APPROPRIATE PRE-TRIAL INVESTIGATION.
>
> III. THIS COURT SHOULD REVERSE THE LAW DIVISION'S DECISION TO DENY DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT'S TRIAL ATTORNEY WAS INEFFECTIVE DUE TO A LACK OF COMMUNICATION.

2 <span>A-1635-15T3</span>

We disagree and affirm the denial of defendant's petition.

We summarize the facts pertinent to our present review.[1] Lopez hired defendant as a waitress at his restaurant. They started a romantic relationship about a year later. As the relationship deepened, defendant and her children moved in with Lopez. She assumed a more prominent role in the management of the restaurant. Lopez even provided for defendant in his will. About seven years after it started, defendant strayed from the relationship with Lopez and became sexually active with Molina. A rift between defendant and Lopez developed, but defendant continued in her position at the restaurant.

Molina met Santana around the same time he met defendant. The two men became fast friends. Molina confided in Santana that, in February 2008, defendant gave him the key to Lopez's apartment, and that he used the key to burgle the residence. He also told Santana that he was upset because Lopez was mistreating defendant.

Molina tried to recruit men, including Santana, to assault Lopez or rob his restaurant, or both. On March 1, 2008, Molina told Santana about a plan he and defendant formulated to rob Lopez at his restaurant. On March 3, Santana met Molina at his apartment where Molina related that he had spoken to defendant and

---

[1] We detailed the facts of this case in our decision affirming defendant's conviction. State v. Terrero, supra, slip op. at 2-3.

laid out the criminal plan to Santana. Defendant's role was to ensure the restaurant door was unlocked and that the restaurant would be empty. She also arranged for Lopez to be in the kitchen so that he did not see Molina and Santana enter the restaurant.

Molina and Santana drove to the restaurant and, after several calls from defendant, entered through the front door unseen by Lopez, who, as planned by defendant, was in the kitchen. Molina attacked Lopez as he exited the kitchen. Molina's assault continued unabated, despite efforts by Santana and defendant to intervene.

Santana left the restaurant. Thirty seconds later, after taking Lopez's watch and jewelry, Molina followed. Santana saw a knife in Molina's possession. Molina told Santana that he had stabbed Lopez.

Defendant dialed 911, but waited fifteen minutes after the attack to call. She gave scant information to the dispatcher and did not request an ambulance. Defendant talked to the police when they arrived. She did not reveal that she knew the perpetrators and falsely described them to the police. She also gave police fabricated information about the robbers' point of entry into the restaurant.

Molina and Santana fled New Jersey. Molina eventually took refuge in Venezuela. Lopez succumbed to complications from the

stab wound inflicted by Molina and died in the hospital two weeks after the attack.  After dogged police work, Santana was arrested. He pleaded guilty to first-degree robbery and testified for the State at trial.

I.

Since the trial court did not conduct an evidentiary hearing relating to the issues raised in defendant's PCR petition, our review of the factual inferences drawn by the court from the record is de novo.  State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citations omitted).  Likewise, we review de novo the trial court's legal conclusions.  Ibid.

In order to establish a case of ineffective assistance of counsel, defendant must demonstrate a reasonable likelihood of success under the two-pronged test established by Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). A defendant must first show that counsel was deficient or made egregious errors, so serious that counsel was not functioning effectively as guaranteed by the Sixth Amendment of the United States Constitution.  Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. A defendant must also demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695. Further, because prejudice is not presumed, Fritz, supra, 105 N.J. at 60-61, defendant must establish "how specific errors of counsel undermined the reliability of the finding of guilt." United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 2047 n.26, 80 L. Ed. 2d 657, 668 n.26 (1984).

## II.

Defendant claims counsel was ineffective because he did not advise her to testify at trial. At the conclusion of all other testimony, the trial judge made clear to defendant that the decision to testify was hers alone. He also advised her, verbatim, of the instruction that he would give to the jury if she chose not to testify, and she chose to have the instruction included in the final charge. As the court was going to recess, the judge offered defendant the opportunity to consult with counsel over the weekend about her choices. Defense counsel indicated that defendant did not need the time to confer because they had extensive prior discussions about defendant's option to testify. Defendant told the court she would accept her attorney's advice and would not

testify. After the judge, again, reminded her it was her preference, not counsel's, defendant said, "I know it's my decision."

Defendant made the tactical decision not to take the stand with full knowledge of the consequences of that choice. The PCR court found that defendant "did not show any signs of dissatisfaction with [counsel's] advice or unwillingness to follow it." When a defendant knowingly, voluntarily and intelligently, with the advice of counsel, exercises her right not to testify, she must bear the consequences of that tactical decision. State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988).

Defendant argues that the case should be remanded for an evidentiary hearing so trial counsel can explain why he failed to advise her to testify in her own defense. An evidentiary hearing should be held only if a defendant presents "a prima facie claim in support of post-conviction relief." R. 3:22-10; State v. Preciose, 129 N.J. 451, 462 (1992). In order to establish a prima facie case, defendant must demonstrate "the reasonable likelihood of succeeding under the test set forth in Strickland v. Washington." Id. at 463. Merely raising a claim for post-conviction relief does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). A "defendant must allege

specific facts and evidence supporting his allegations," State v. Porter, 216 N.J. 343, 355 (2013), and "do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, supra, 321 N.J. Super. at 170. Petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity the facts that he wished to present." State v. Jones, 219 N.J. 298, 312 (2014).

Defendant did not proffer what she would have said if she testified. As such, she did not establish a prima facie case that her attorney's advice about testifying was a serious error that undermined her Sixth Amendment right to counsel. Absent such proof, an evidentiary hearing is not warranted.

Even if counsel's advice was deficient, defendant failed to show that she was prejudiced by counsel's recommendation. If she took the stand to refute the evidence of her complicity with Molina and Santana, her aim would have to have been to prove that she had no knowledge of the plan to rob or kill Lopez, or both.

Trial counsel presented a panoply of arguments during summation contraindicating defendant's involvement in the planned crimes. No witness testified that defendant knew what Molina was going to do. Santana did not know what plans Molina made with defendant. The persons solicited by Molina and Santana to harm the victim did not know defendant. Counsel refuted Santana's

testimony that the murder was planned in advance by Santana's admission that he did not know about the plan until 1:45 a.m. on the morning of the crime. There was no evidence that defendant was going to receive any proceeds from the robbery because Santana and Molina were going to share the spoils equally. Defendant cooperated with the police by giving a statement immediately after the incident. Santana and Molina fled; defendant stayed in New Jersey and went to the victim's hospital bedside after the crime.

The jury rejected those assertions.[2] Defendant failed to show that there was a reasonable probability that the result would have been different if she testified. Strickland, supra, 466 U.S. at 693-95, 104 S. Ct. at 2067-68, 80 L. Ed. 2d at 697-98.

## III.

Defendant also argues her trial counsel failed to conduct "an appropriate pre-trial investigation." Her claim of ineffective assistance is based on counsel's failure to hire an investigator to find Molina. Molina, by all accounts, fled to Venezuela. Although defendant contends Molina would have "absolved" her at trial, she did not submit an affidavit, certification or other proof to support that bald-faced assertion. Jones, supra, 219

---

[2] The ample evidence that supported the jury's finding that defendant knew of or planned the attack on Lopez, or both, was set forth in our decision on direct appeal. Terrero, supra, slip op. at 5-7.

N.J. at 312; Cummings, supra, 321 N.J. Super. at 170. She made no proffer as to what Molina would have said to an investigator. She presented no proof Molina would have returned to New Jersey to testify.[3] Again, she failed to establish a prima facie case of ineffective assistance.

Assuming, arguendo, that counsel was ineffective because he failed to hire an investigator, defendant failed to demonstrate a reasonable probability the result would have been different if he did. Strickland, supra, 466 U.S. at 693-95, 104 S. Ct. at 2067-68, 80 L. Ed. 2d at 697-98; Fritz, supra, 105 N.J. at 60-61. The trial judge found there was no likelihood an investigator would have been able to find Molina, a fugitive in a foreign land that does not have an extradition treaty with the United States. We agree. It is improbable that Molina, who is said to have inflicted a twelve to fifteen inch deep stab wound that exposed the murdered victim's intestines, would have left the safe haven of Venezuela and returned to exonerate defendant, knowing he would face a murder charge.

Again, defendant demands an evidentiary hearing so trial counsel can testify why he did not try to contact Molina. Post-

---

[3] Defendant has not indicated how Molina's hearsay statement to an investigator would have been admissible if Molina did not appear in court.

conviction relief applications are not fishing expeditions. <u>State</u> <u>v. Marshall</u>, 148 <u>N.J.</u> 89, 269-70, <u>cert. denied</u>, 522 <u>U.S.</u> 850, 118 <u>S. Ct.</u> 140, 139 <u>L. Ed.</u> 2d 88 (1997) ("[W]e note that PCR 'is not a device for investigating possible claims, but a means for vindicating actual claims.'") Defendant, whose unsupported allegations do not present a prima facie case, may not use an evidentiary hearing to explore this issue.

IV.

Lastly, defendant claims ineffective assistance of counsel because of "a lack of communication." She claims that, despite counsel's efforts to converse with her through an interpreter, defendant had difficulty understanding the interpreters, "presumably due to differences in education and dialect." Defendant claims she was not adequately informed of the State's evidence against her because of the lack of proper interpretation.

As the trial judge noted, defendant did not specify "any particular incident or factual support that demonstrate[d] her inability to communicate with trial counsel via the Spanish translators"; nor did she identify the communications that she did not understand. Moreover, the trial judge found that defendant had no problem understanding the court interpreters utilized over the course of the long trial, both in the courtroom and during

breaks when trial counsel spoke with his client utilizing the court interpreters.

Further, defendant did not indicate how she was prejudiced by the lack of communication with counsel. She did not show a reasonable probability that the results of the trial would have been different if proper translation was accomplished. These are more unsupported allegations that meet neither prong of the Fritz/Strickland standard. Strickland, supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; Fritz, supra, 105 N.J. at 58.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION