**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2599-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ISRAEL HIRALDO, a/k/a
YSAEL HIRALDO,

     Defendant-Appellant.

_____

Argued October 25, 2023 – Decided November 14, 2023

Before Judges Mayer, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 19-02-0102.

Kevin S. Finckenauer argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, Assistant Deputy Public Defender, of counsel and on the briefs).

William P. Cooper-Daub argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; William P. Cooper-Daub, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from an April 25, 2022 judgment of conviction for robbery and weapons offenses. He also appeals from the sentence imposed. We affirm.

We recite the facts from the testimony presented during the three-day jury trial. On November 27, 2018, defendant and three other men approached an individual who was walking toward the Elizabeth train station. The victim noticed the four men and grew suspicious. He slowed his pace to let the group pass, and "made a mental note of their faces."

Two of the men crossed to the other side of the street while the other two men remained on the same side of the street as the victim. One of the men on the same side of the street as the victim turned and chambered a round in a handgun.

That man, subsequently identified by the victim as defendant, ordered the victim to turn around and raise his hands. The victim complied. Defendant pressed the gun into the victim's back while another man took the victim's wallet. The four men then fled.

2

The victim immediately called 9-1-1 and gave the operator a description of the four men. Because the victim placed the 9-1-1 call as he watched the men flee, the victim provided contemporaneous information as to their location.

Officer Timothy Goldate of the Elizabeth Police Department responded to the scene. While seated in his patrol car, the officer saw four men not far from the train station. Two of the men fit the description given by the victim to the 9-1-1 operator.

Because some of the men matched the victim's descriptions, all four men were detained by the police. The responding officers gathered the four men in a nearby parking lot and conducted a show-up identification. The officers presented the four men, one at a time, for the victim to identify. The victim identified all four men as involved in the robbery and, specifically, identified defendant as the man holding the gun.[1]

The police also recovered a .38-caliber handgun near the scene. The gun contained at least one hollow nose bullet and one regular bullet. At trial, the State's forensic expert discussed the results of DNA and fingerprint testing on the recovered handgun. The handgun tested negative for fingerprints. However,

---

[1] At trial, the victim could not make a definitive identification of defendant, explaining it had "been too long" since the incident.

A-2599-21

the State's forensic expert testified the mixture of DNA found on the gun revealed a statistically probable match for three of the four men, including defendant.

On February 19, 2019, defendant was charged in Indictment No. 19-02-0102 with first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2) (Count One), second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (Count Two), second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a)(1) (Count Three), fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1) (Count Four), and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 (Count Five).

Defendant's trial began on February 7, 2022. Defendant elected to testify at trial. On February 9, 2022, the jury found defendant guilty on all counts.

On April 22, 2022, defendant appeared for sentencing. On Count One, the judge sentenced defendant to a fifteen-year prison term with an eighty-five percent period of parole ineligibility, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[2] On Count Two, the judge sentenced defendant to a concurrent five-year sentence with a forty-two-month period of parole ineligibility. Additionally, the judge sentenced defendant to a concurrent

---

[2] The judge merged the convictions on Counts Three and Five into Count One.

eighteen-month sentence on Count Four. The judge entered a judgment of conviction on April 25, 2022.

On appeal, defendant raises the following arguments:

POINT I

THE LACK OF ANY ON-THE-RECORD COLLOQUY WITH [DEFENDANT] ABOUT HIS DECISION TO WAIVE HIS RIGHT TO NOT TESTIFY FAILED TO ADEQUATELY SAFEGUARD HIS SIGNIFICANT CONSTITUTIONAL RIGHT TO REMAIN SILENT. ADDITIONALLY, THE SURROUNDING CIRCUMSTANCES INDICATE THAT [DEFENDANT] DID NOT MAKE THE DECISION TO WAIVE HIS RIGHT KNOWINGLY AND INTELLIGENTLY. (Not Raised Below).

POINT II

THE TRIAL COURT REVERSIBLY ERRED BY IMPROPERLY INSTRUCTING THE JURY ON JOINT AND CONSTRUCTIVE POSSESSION WHEN THE STATE'S THEORY OF THE CASE AND ITS EVIDENCE PRESENTED TO THE JURY DEMONSTRATED ONLY ACTUAL AND SOLE POSSESSION. (Not Raised Below).

POINT III

THE TRIAL COURT ERRONEOUSLY INSTRUCTED THE JURY THAT THE STATE DID NOT HAVE TO PROVE THAT [DEFENDANT] KNEW THE HOLLOW NOSED BULLET WAS IN FACT HOLLOW NOSED IN ORDER TO FIND HIM

5

GUILTY OF KNOWINGLY POSSESSING A PROHIBITED WEAPON. (Not Raised Below).

POINT IV

THE HANDGUN PERMIT APPLICATION PROCESS AT THE TIME OF [DEFENDANT]'S ALLEGED POSSESSION OF THE HANDGUN CONTAINED A REQUIREMENT THAT UNCONSTITUTIONALLY PRECLUDED HIM FROM BEING ELIGIBLE TO RECEIVE SAID PERMIT. ACCORDINGLY, HIS CONVICTION FOR FAILING TO COMPLY WITH A FACIALLY UNCONSTITUTIONAL PERMITTING PROCESS CANNOT STAND. (Not Raised Below).

POINT V

THE TRIAL COURT EXPLICITLY IMPOSED A TRIAL PENALTY ON [DEFENDANT] BY SAYING HE SHOULD RECEIVE A HEAVIER SENTENCE FOR FAILING TO PLEAD GUILTY AND WASTING THE COURT'S TIME AND RESOURCES, IN ADDITION TO MAKING SEVERAL ERRORS IN ITS ANALYSIS OF THE AGGRAVATING AND MITIGATING FACTORS. THESE ERRORS COMPOUNDED TO RESULT IN AN EXCESSIVE SENTENCE FOR A YOUTHFUL DEFENDANT WITH NO CRIMINAL HISTORY.

We review the arguments not raised before the trial court for plain error. R. 2:10-2. We generally "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." State v. Witt, 223 N.J. 409, 419 (2015) (citing State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234

6

(1973))).  Under the plain error standard, reversal is warranted only if an error was "clearly capable of producing an unjust result."  R. 2:10-2.

While not raised to the trial court, defendant contends the judge erred in failing to conduct an on the record discussion regarding defendant's decision to testify.  We disagree.

A defendant's right to testify on his own behalf "is essential to our state-based concept of due process of law, which guarantees a 'fair and impartial trial in which there is a legitimate and decorous recognition of the substantive rights of the defendant.'"  State v. Savage, 120 N.J. 594, 628 (1990) (quoting State v. Morriggi, 15 N.J. Super. 479, 481 (App. Div. 1951)).  However, a defendant's decision whether to testify is "an important strategic or tactical decision" to be made between a defendant and defendant's attorney.  State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988).  "It is the responsibility of a defendant's counsel, not the trial court, to advise defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so or of not doing so."  Ibid.

Further, a "trial judge should not discuss the issue directly with a represented defendant, since that 'may inappropriately involve the trial court in the unique attorney-client relationship . . . .'"  State v. Coon, 314 N.J. Super.

7

426, 435 (App. Div. 1998) (quoting Bogus, 223 N.J. Super. at 423-24). "'[T]he better practice [is] for a trial court to inquire of counsel whether [counsel] has advised a defendant . . . of [their] right to testify.'" State v. Ball, 381 N.J. Super. 545, 556 (App. Div. 2005) (alteration in original) (quoting Savage, 120 N.J. at 631). The trial court "need not engage in a voir dire on the record to establish [a] defendant's waiver." Ibid. As long as a defendant is represented by counsel, a judge commits no legal error by failing to address defendant's decision to testify. State v. Cusumano, 369 N.J. Super. 305, 314 (App. Div. 2004).

Because New Jersey case law does not support his argument on this point, defendant urges this court to adopt the Hawaii Supreme Court's reasoning in State v. Torres, 439 P.3d 234 (Haw. 2019). In that case, the Hawaiian court held "trial courts are required to engage in an on-the-record colloquy with a defendant when the defendant chooses to testify to ensure that a waiver of the right not to testify is knowing, intelligent, and voluntary." Id. at 246-47.

We decline to follow the Hawaii Supreme Court's decision. As a preliminary matter, published opinions from other jurisdictions are not binding on New Jersey courts. Lewis v. Harris, 188 N.J. 415, 436 (2006). Additionally, Hawaii requires on-the-record colloquies with a defendant waiving the right to testify, and deems such a right to be of "equal constitutional stature" to the right

8

to testify. Torres, 439 P.3d at 236-37, 244-46. However, New Jersey courts do not require on-the-record discussion related to a defendant's decision to testify when a defendant is represented by counsel. See Bogus, 223 N.J. Super. at 423.

Here, prior to the start of the trial, the judge asked whether defense counsel informed defendant of the right to testify. Defense counsel responded defendant was "likely going to testify," and stated, "we've been contemplating [the decision] for quite some time." The judge further explained on the record that defendant had the right to decide if he would testify.

On the second day of trial, defense counsel asked the judge for a ten-minute recess to speak with defendant regarding defendant's decision to testify. The judge granted a fifteen-minute recess for counsel to confer with defendant. The judge stated:

> THE COURT: You're going to advise me. If [defendant] wants to testify, he can go immediately; okay? If he elects not to testify, I will question him on that to make sure that it is a knowing, voluntary, intelligent waiver of his rights; okay? Does that sound fair to you?
>
> [DEFENSE COUNSEL]: That does.

Defense counsel and defendant then took a twenty-three-minute recess. Upon returning to the courtroom, the judge confirmed with counsel that

9

defendant had adequate time to discuss his decision to testify.  Specifically, the judge asked:

> THE COURT:  Have you had enough time to discuss this matter in private and with an interpreter with [defendant]?
>
> [DEFENSE COUNSEL]:  Yes, Judge, and I confirmed that [defendant] had enough time with me, as well.
>
> THE COURT:  You did?
>
> [DEFENSE COUNSEL]: Yes, in the presence of both interpreters.

Having reviewed the record, we are satisfied the judge did not need to engage in any further colloquy regarding defendant's decision to testify.  On this record, it is clear defendant had ample opportunity to discuss his decision with defense counsel through the use of Spanish interpreters.  Any further inquiry by the judge may have impermissibly impinged on the attorney-client relationship.  Under the given circumstances, the judge's decision not to engage in a colloquy with a represented defendant about the decision to testify did not constitute error, let alone plain error.

Despite not raising the issue to the trial judge, defendant next argues the judge improperly instructed the jury on joint and constructive possession of a

weapon because the State's evidence was limited to actual possession of the gun during the robbery. We disagree.

Defendant did not object to the charge during the charge conference. Further, defendant never raised any objection to the jury charge prior to the jury commencing deliberations. See State v. Funderburg, 225 N.J. 66, 79 (2016) (noting Rule 1:7-2 provides that the appropriate time to object to a jury charge is "before the jury retires to consider its verdict"). "If the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012).

Here, the judge reviewed the proposed jury charges with counsel several times. Defense counsel told the judge that he reviewed the entire charge with defendant through a Spanish interpreter, and defendant "indicated he had no additional questions" regarding the charges. After instructing the jury, the judge asked defense counsel if there were any objections. Defense counsel responded, "[n]o objection. No additional requests."

When a jury has been instructed as to multiple theories of possession and is not asked to return separate verdicts, a defendant's conviction must be reversed "unless the State presented sufficient evidence to support a guilty

verdict under both theories." State v. Roldan, 314 N.J. Super. 173, 186-87 (App. Div. 1998). Under the Model Jury Charges, "actual possession" exists when a person knows what an object is, has knowledge of its character, and knowingly "has it on his/her person at a given time" or "has direct physical control over a thing . . . ." Model Jury Charges (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (rev. Sept. 10, 2012). In contrast, "constructive possession" exists where a person "does not physically have the property, but though not physically on one's person, he/she is aware of the presence of the property and is able to and has the intention to exercise control over it." Ibid. Further, where "one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint . . . ." Ibid.

Although the State argued defendant actually possessed the gun used to commit the robbery, the judge's instruction on joint and constructive possession was amply supported by the evidence. The State's theory of the case did not foreclose evidence supporting alternate theories for the jury's consideration, provided the evidence supported such alternate theories.

The evidence elicited by defense counsel could have supported an alternative theory that defendant was not the actual robber and the victim

12

confused defendant's identity with one or more of the other men involved in the robbery. Based on the trial evidence, defense counsel argued the following to the jury: (i) the victim's descriptions of the robbers' clothes were inconsistent; (ii) the victim never gave the 9-1-1 operator a description of the gunman's facial features; (iii) two of the men involved in the robbery, not including defendant, were seen near where the handgun was recovered; and (iv) Officer Goldate observed the four men walking together, but did not see them exchange any objects.

Additionally, defense counsel emphasized the State's DNA expert testified the mixture of DNA found on the gun produced stronger matches for two of the men involved in the robbery than defendant's DNA. While defendant acknowledged handling the gun the night of the robbery, he claimed he never used the gun in connection with the robbery.

Based on this evidence, the jury could have rationally agreed with the defense's theory and found defendant guilty of constructive possession as defined by the judge in his charging instructions, even if defendant was not the gunman. Having reviewed the record, we are satisfied the judge's decision to include charges for actual, joint, and constructive possession were supported by the evidence and did not rise to the level of error, let alone plain error.

A-2599-21

We next consider defendant's argument the judge erred in charging the jury regarding possession of hollow nose bullets because the charge was misleading and contradicted the language in N.J.S.A. 2C:39-3(f). Defendant contends the "knowing" requirement under the statute applied to all elements of a charged offense, meaning the possession of the gun and that the gun was loaded with hollow nose bullets. Again, we disagree.

The judge, tracking the Model Jury charge, instructed the jury that it may find defendant knowingly possessed hollow nose bullets without proving that defendant actually knew the exact nature of bullets in the handgun. The judge told the jury that "defendant must know or be aware that he possessed the item. Here the item's alleged to be ammunition. The State is not required to prove that at the time he knowingly possessed the ammunition, defendant also knew that it was hollow nose or dum-dum bullets."

Defendant concedes the judge's instruction tracked the Model Jury charge. "When a jury instruction follows the model jury charge, although not determinative, 'it is a persuasive argument in favor of the charge as delivered.'" State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008), aff'd, 200 N.J. 444 (2009) (quoting State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000)). As our Supreme Court stated, "[i]t is difficult to find that a charge that follows

the Model Charge so closely constitutes plain error." Mogull v. CB Com. Real Est. Grp., 162 N.J. 449, 466 (2000).

Defendant correctly notes the Model Jury Charge for possession of hollow nose bullets cites to State v. Smith, 197 N.J. 325, 338 (2009). However, defendant misapplies the holding in that case. In Smith, our Supreme Court construed a "knowing" requirement in a similar firearms offense: N.J.S.A. 2C:39-3(d), which creates an offense when a person "knowingly has in his possession any firearm which has been defaced." Smith, 197 N.J. at 331 (quoting N.J.S.A. 2C:39-3(d)). In that case, the Court noted the "knowing" requirement in other weapons-possession offenses has been interpreted as requiring general knowledge of the item possessed, but not knowledge of any illegal characteristic. Ibid. The Court further explained, "alternative phraseology [possession of a defaced firearm] would not have compelled a different conclusion, particularly in light of the similar phrasing of other subsections of N.J.S.A. 2C:39-3." Id. at 333.

Having reviewed the record, we are satisfied the judge's instruction that the "knowing" requirement applied only to possession of the handgun and not to the possession of hollow nose bullets did not constitute error. The judge

instructed the jury using the Model Jury charge without objection from counsel. The charge as given in this case was not error, much less plain error.

We next consider defendant's argument that the United States Supreme Court decision in New York State Rifle and Pistol Association v. Bruen, 597 U.S. __, 142 S. Ct. 2111 (2022) rendered New Jersey's handgun permit statute unconstitutional. We reject this argument.

We recently stated Bruen did not render New Jersey's gun permitting scheme facially invalid. State v. Wade, ___ N.J. Super. ___ (App. Div. 2023) (slip op. at 27). In Wade, we addressed the same issue raised by defendant in this appeal, and determined New Jersey's gun permitting scheme was constitutional and defendant lacked standing to challenge the permit requirement because he never applied for a permit. Ibid.

The issue in Wade was whether Bruen wholly invalidated New Jersey's gun permit scheme. Id., (slip op. at 3-4). Because sections of New Jersey's gun permit statutes, N.J.S.A. 2C:58-3 and -4, were not dependent on a justifiable need requirement, which was declared unconstitutional in Bruen, we held the justifiable need requirement was severable and the remaining portions of the statute were valid. Wade, ____ N.J. Super. ____ (slip op. at 24-26); see also N.J.S.A. 1:1-10 (noting the constitutionality of New Jersey's permitting scheme

16

depends on whether the justifiable-need requirement is severable); Inganamort v. Borough of Fort Lee, 72 N.J. 412, 423 (1997) (providing a statutory provision may be severed "where the invalid portion is independent and the remaining portion forms a complete act within itself"). Because Wade concluded the provisions of N.J.S.A. 2C:58-4, with the exception of requiring a "justifiable need" to carry a handgun, remained valid, we reach the same result in this matter.[3]

Additionally, we are satisfied the facts in this case are distinguishable from Bruen. Here, defendant admittedly never applied for a handgun permit. Notwithstanding that he never applied for a gun permit, defendant argues that if he applied, a permit would have been issued but for the unconstitutional justifiable need provision.

---

[3] The day after the Bruen decision, New Jersey's Attorney General issued a directive advising the justifiable need requirement for obtaining a handgun permit was no longer constitutional. Attorney General Law Enforcement Directive No. 2022-07, "Directive Clarifying Requirements For Carrying Of Firearms In Public" (June 24, 2022). However, that same directive made clear that Bruen did "not eliminate our overall permitting requirements" nor "change any other aspect of New Jersey's public carry laws." Ibid. New Jersey's Legislature also passed a law eliminating the "justifiable need" requirement in revising the gun permitting scheme. L. 2022 c. 131 (Dec. 2022).

This argument was raised and rejected in Wade. In Wade, we stated "[g]enerally, to establish standing to challenge an allegedly unconstitutional permit statute, the challenger must have applied for a permit or license under the statute." Wade, ___ N.J. Super. ___ (slip op. at 19) (citation omitted).

Moreover, defendant's argument ignores that he had not attained the age of twenty-one years at the time of the robbery. Because he was not twenty-one years old, defendant could not have obtained a gun permit if he applied, regardless of the justifiable need provision. N.J.S.A. 2C:58-3(c). Nor did defendant demonstrate his ability to satisfy the other requirements under N.J.S.A. 2C:58-4(c) to obtain a gun permit. See Wade, ___ N.J. Super. ___ (slip op. at 20–21) (noting the defendant did not submit certifications establishing he would have satisfied other criteria under N.J.S.A. 2C:58-4(b) and -(c) to qualify for a gun-carry permit).

Nor do we deem defendant's arguments under the First and Second Amendments persuasive. The cases relied upon by defendant in support of this argument involved challenges to gun permitting laws deemed unconstitutional in their entirety. See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151 (1969); Staub v. City of Baxley, 355 U.S. 313, 319, 325 (1958); Lovell v. City of Griffin, 303 U.S. 444, 452–53 (1938).

18

In Wade, we rejected the same argument resting upon the same cases as made by defendant here. In that case, we reasoned that other courts had declined to wholesale incorporate the application of First Amendment law to a Second Amendment analysis. Wade, ___ N.J. Super. ___ (slip op. at 22-23). As we explained in Wade, "law-abiding citizens are not free to ignore a statute and presume that they would have been granted a permit but for one potentially invalid provision of a permit statute." ___ N.J. Super. ___ (slip op. at 21) (citation omitted).

For these reasons, we reject defendant's argument that New Jersey's gun permit scheme was unconstitutional and provided a defense to the State's case against him.

We next address defendant's claim the judge erred in applying the aggravating and mitigating factors in imposing the sentence. Specifically, defendant contends the sentence was excessive because he was "a youthful defendant with no criminal history." He also argues the judge "essentially impos[ed] a penalty" because defendant invoked his constitutional right to proceed to trial. We reject these arguments.

We review a sentence imposed by a trial court for abuse of discretion. State v. Miller, 237 N.J. 15, 28 (2019). A sentence must be affirmed "unless:

(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'"  State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

A decision not to plead guilty must "not be considered in withholding or imposing a sentence of imprisonment." N.J.S.A. 2C:44-1(c)(1). The prohibition of imposing a "trial-penalty" has been recognized by the United States Supreme Court and New Jersey courts. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978); State v. Jimenez, 266 N.J. Super. 560, 570 (App. Div. 1993).

Here, while the judge mentioned co-defendants during the sentencing hearing, he did not treat defendant differently as a result of defendant exercising his constitutional right to proceed to trial. In his sentencing decision, the judge stated:

> I'm going to sentence you significantly more severely than your colleagues. And that's because your conduct in this case was qualitatively more serious than the others. And thus, the sentence should be significantly longer. The other three individuals pled guilty. They took responsibility. They negotiated a plea agreement with the State. They saved the State time and resources. And the uncertainty of a jury trial. They saved the victim the difficulty of flying out of the country to come back here. But most important to the [c]ourt, they

accepted responsibility and owned, to some degree, the horror that they inflicted on this family and on our community.

You were the princip[al].  You are the individual who cocked the gun.  You loaded the chamber with hollow-point bullets.  With depravity, it was you who turned and pointed that handgun at a completely innocent stranger minding his business, just trying to get to work at an hour when most of the rest of us are happy and sleeping.  You then . . . stuck [the victim] . . . in the back with that loaded handgun, while another ransacked him.

At that moment, [defendant], [the victim] did not know how this terror would end.  Would he - which happens often - tragically end up dead, and for nothing.  If you had panicked, or decided killing the victim would reduce the likelihood that . . . you might be caught and identified, you may very well have pulled the trigger in a moment of haste, or inadvertently.  After all, you cocked that gun to load it seconds before.  You loaded that gun for a reason.

There's no comparison in terms of culpability of you versus the other three defendants.  You were the only one with a loaded handgun.  You were the only one who pointed that handgun.  You were the only one who placed that handgun in the individual's back.  And you're the only one who made demands verbally of the [victim].  Without question, as compared to your . . . co-defendants, you are the most culpable and caused the most terror.  Since none of the others had weapons, none of the others could have inflicted the threat of death, as you did.  Two of the others were across the street as lookouts.  Certainly, they played an integral role in this conspiracy, but nothing in terms of the terror that you inflicted.  The other individual was also

21

integral, but unarmed. And so, as a result, you have earned, sadly, a much more severe sentence than your co-defendants.

Having reviewed the sentencing transcript, we are satisfied the judge did not impose a trial penalty on defendant for invoking his constitutional right to assert his innocence by proceeding to trial.

Further, we note the judge properly balanced the sentencing requests. Defendant requested a ten-year sentence, the minimum for a first-degree conviction. The State recommended an eighteen-year sentence with an eighty-five percent parole-ineligibility period under NERA. The judge considered defendant's "lack of criminal history and his youthful status" and sentenced defendant to fifteen years subject to NERA, merging the conspiracy charge and possession of a weapon for an unlawful purpose charge into a single count. Further, the judge sentenced the defendant to forty-two months of parole ineligibility on the unlawful possession of a handgun charge, exercising his discretion to have it run concurrently, although he could have ordered the sentence to run consecutively. Similarly, the judge did not abuse his discretion in sentencing defendant to eighteen months on the hollow nose bullet charge, and running the sentence concurrent to the fifteen-year sentence on the first-degree conviction.

Based on this record, the judge did not violate the sentencing guidelines when he sentenced defendant differently from his co-defendants. "[A] sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter." State v. Roach, 146 N.J. 208, 232 (1996) (quoting State v. Hicks, 54 N.J. 390, 391 (1969)).

Nor do we agree with defendant's argument that the judge misapplied the aggravating and mitigating factors in his sentencing decision. Defendant claims the judge erred in finding aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (specific and general deterrence), substantially outweighed the applicable mitigating factors, factor seven, N.J.S.A. 2C:44-1(b)(7) (no criminal history) and factor fourteen, N.J.S.A. 2C:44-1(b)(14) (youth). Defendant further contends the judge erred in assigning "very little weight" to mitigating factor fourteen, despite defendant having turned eighteen at the time of the offenses.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). We "must not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). In reviewing a sentencing decision, we will affirm unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors

were not based upon competent and credible evidence in the record; and (3) "the sentence was nevertheless 'clearly unreasonable so as to shock the judicial conscience.'" State v. Liepe, 239 N.J. 359, 371 (2019) (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)). The sentencing court must "state reasons for imposing [the] sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting [the] sentence." R. 3:21-4(g); State v. Case, 220 N.J. 49, 65 (2014). A sentencing court must then "balance the relevant factors, and explain how it arrive[d] at the appropriate sentence." O'Donnell, 117 N.J. at 215.

Here, the judge applied aggravating factor nine for "it's specific deterrence." Despite the lack of a criminal record, the judge reviewed the nature of the offenses, including defendant's "calculated indifference to another human being" by placing a loaded a gun on a stranger's back. Based on the specifics of the offenses committed by defendant in this case, the judge explained he gave "extraordinary weight to specific deterrence." As to general deterrence, the judge explained, "people need to know that there will be an accounting" for gun-related crimes and the potential for imposing lengthy sentences.

During the sentencing hearing, the judge reviewed defense counsel's requested mitigating factors. The judge expressly took "into consideration [defendant]'s lack of criminal history and his youthful status."

In imposing the sentence, the judge found, "qualitatively . . . aggravating factor [nine] substantially outweigh[ed] mitigating factors [seven] and [fourteen]." Despite the "horrific" crime, the judge did not "believe the sentence at the higher end of the range of [eighteen] years . . . [was] warranted." However, the judge also stated that the minimum sentence requested by defense counsel in "a case of this severity" was not appropriate. The judge reviewed the facts with care and precision, and stressed defendant and his co-defendants "sought to terrorize, to take what they wanted, no matter the regard, or lack of regard, for another human being."

After reviewing the judge's sentencing decision, we are satisfied the sentence imposed was grounded on competent and credible evidence in the record, the judge properly weighed and applied the aggravating and mitigating factors, and the sentence does not shock the judicial conscience.

To the extent we have not addressed any of defendant's remaining arguments, we deem those arguments to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

25

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2599-21